2007 ND 101

Robisita WAGNER, Plaintiff, Appellant and Cross–Appellee

v.

Oral WAGNER, Defendant, Appellee and Cross–Appellant.

No. 20060228.

Supreme Court of North Dakota.

June 26, 2007.

 

Kent M. Morrow, Severin, Ringsak & Morrow, Bismarck, ND, for plaintiff, appellant and cross-appellee.

Gregory Ian Runge, Bismarck, ND, for defendant, appellee and cross-appellant.

VANDE WALLE, Chief Justice.

[¶1] Robisita Wagner appealed and Oral Wagner cross-appealed from a divorce judgment, ordering Oral Wagner to pay child support, dividing the parties' marital property, and awarding Robisita Wagner spousal support. We affirm the district court's award of child support; however, because we conclude the court erred in its distribution of the marital property and award of spousal support and misapplied the law in not awarding attorney's fees, we reverse and remand for further proceedings.

I

[¶2] Robisita and Oral Wagner were married on June 11, 1992, in Manila in the Philippines. The district court found that they had met through an advertisement in a magazine and that at the time of their marriage, Oral Wagner was fifty-two years old and Robisita Wagner was twenty-eight years old. Neither of the parties had previously been married. The parties had one child born to the marriage in March 1994.

[¶3] Prior to the marriage, Oral Wagner had farmed his family farm near Arena his entire life, which includes 1,930 acres of crop and grazing land. Robisita Wagner had previously received a business management degree from a university in the Philippines and had been employed as a housekeeper and a secretary in a casino. She received her visa to come to the United States in February 1993 and became a United States citizen in March 1996. During their marriage, Oral Wagner and Robisita Wagner lived on the family farm. The district court found that although Robisita Wagner did little farmwork, she did the bulk of the housework and childcare. The court also found that Oral Wagner is presently a retired, disabled farmer suffering from diabetes, while Robisita Wagner is otherwise in good health.

[¶4] Robisita Wagner commenced this divorce action in July 2004. In March 2005, Robisita Wagner filed the complaint and moved for a default judgment. In April 2005, the district court held a hearing on Robisita Wagner's motion for default judgment. The court issued a partial default judgment in July 2005, which resolved the issues of child support and visitation, set Oral Wagner's child support obligation at $475 per month, required Oral Wagner to provide health insurance, and distributed the parties' personal property. At that time, the court reserved ruling on the issues of spousal support, distribution of the real estate in the marital estate, distribution of the parties' debts, and attorney's fees. An additional hearing was scheduled for October 2005, but the court granted a continuance after Oral Wagner retained counsel to represent him.

[¶5] Oral Wagner subsequently moved for relief from the partial default judgment. After a hearing, the district court vacated the partial judgment, "except for the issues of the divorce being granted, of

child custody; and the parties' personal property presently in each's possession." The court further held that although the child support was incorrectly calculated, the child support would remain at the amount previously set, and "[a]ny overage or arrearage in child support, the issues of visitation, all other personal property, debt and real property shall be addressed at the trial."

[¶ 6] On June 1, 2006, a trial was held in the district court. Because the parties had previously agreed on a visitation schedule and that Oral Wagner's correct child support obligation was $182 per month, the court determined the remaining issues for trial were the date the agreed child support obligation started and how to handle any resulting overpayment, disposition of the remaining real property and equipment, disposition of the marital debt, spousal support, and attorney's fees.

[¶ 7] After trial, the district court held Oral Wagner's $182 per month child support obligation would commence June 1, 2006, but refused to retroactively order the reduced amount, concluding it was not in the child's best interests and the obligation was incorrectly calculated at the outset due to Oral Wagner's initial failure to participate in the divorce proceedings. The court found the parties' Rule 8.3 Property and Debt listing accurately stated the marital assets and debts, indicating a net marital estate of approximately $332,500, including $464,000 in land assets, $41,600 in farm machinery and equipment, and approximately $174,700 in debt. The court ordered Oral Wagner to pay Robisita Wagner $12,000 for her share of the distribution of the marital property and to pay her spousal support in the amount of $200 per month for two years. The district court awarded Oral Wagner the remaining assets and all marital debts.

## II

[¶ 8] Robisita Wagner argues the district court erred in distributing the parties' marital property and in awarding spousal support.

### A

[¶ 9] Under N.D.C.C. § 14–05–24(1), the district court must make an equitable distribution of the parties' marital property and debts. *Holden v. Holden,* 2007 ND 29, ¶ 10, 728 N.W.2d 312; *Kostelecky v. Kostelecky,* 2006 ND 120, ¶ 12, 714 N.W.2d 845. In distributing marital property, the district court must consider all of the parties' assets to ensure the division is equitable. *Donlin v. Donlin,* 2007 ND 5, ¶ 11, 725 N.W.2d 905; *Kostelecky,* at ¶ 12. After including all of the parties' marital assets, the court must consider the *Ruff–Fischer* guidelines in its distribution of the parties' assets. *Bladow v. Bladow,* 2003 ND 123, ¶ 7, 665 N.W.2d 724. Under the *Ruff–Fischer* guidelines, the court must consider:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.* (quotations omitted); *Donlin,* at ¶ 11.

[¶ 10] The district court is not required to make specific findings on each *Ruff–Fischer* factor, but must explain the rationale for its decision. *Kostelecky,* 2006 ND 120, ¶ 13, 714 N.W.2d 845; *Bladow,* 2003 ND 123, ¶ 7, 665 N.W.2d 724. Although the property division need not be equal to be equitable, the district court

must explain any substantial disparity. *Kostelecky,* at ¶ 13.

[¶ 11] "North Dakota law does not mandate a set formula or method to determine how marital property is to be divided; rather, the division is based on the particular circumstances of each case." *Holden,* 2007 ND 29, ¶ 10, 728 N.W.2d 312 (citing *Ulsaker v. White,* 2006 ND 133, ¶ 14, 717 N.W.2d 567). We have recognized that a long-term marriage supports an equal distribution of property. *Holden,* at ¶ 10 (quoting *Donlin,* 2007 ND 5, ¶ 11, 725 N.W.2d 905). We have also recognized that liquidation of an ongoing farming or business operation is ordinarily a last resort. *Holden,* at ¶ 14; *Kostelecky,* at ¶ 13; *Gibbon v. Gibbon,* 1997 ND 210, ¶ 7, 569 N.W.2d 707. "We have upheld the distribution of farm assets to one spouse with an offsetting monetary award to the other spouse." *Gibbon,* at ¶ 7.

[¶ 12] Here, the district court considered the *Ruff–Fischer* guidelines and made a number of additional findings. The district court found that at the time of trial Oral Wagner was sixty-five years old and Robisita Wagner was forty-two years old. Regarding their respective earning abilities, the court found that Robisita had a business management degree she never used and that although she previously had secretarial and housekeeping jobs, she did not work during the marriage. Robisita Wagner testified that she did not speak English well enough to obtain a business management job and that while she had searched for jobs without success, she would like to be trained as a medical transcriptionist. The court found there was no reason Robisita Wagner could not earn at least a minimum wage. The court found Oral Wagner is disabled, unable to farm or ranch, and rents out the farm land. The court found that Oral Wagner rents out the crop land for $14,500 per year and the pasture land for $500 per year and that Oral Wagner has no other income, other than social security disability payments, and has no other earning ability.

[¶ 13] Regarding the parties' conduct during the marriage, the district court found that neither party alleged abuse on the part of the other, and Robisita Wagner did the homemaking and childcare while Oral Wagner did the farm and ranch work. The court also found that Robisita Wagner did accumulate large telephone bills. In considering the parties' station in life, the court found that Robisita Wagner is relatively young, but never apparently owned much although she testified that her income in Hong Kong was substantial. The court stated, "She would be what would be expected of a typical farm wife thirty years ago. The fact that she was a 'mail order bride' and has some difficulty with English contributes to her station in life, and may make it harder for her to improve upon it than others of similar age and education." The court found Oral Wagner is a retired, disabled farmer who could make ends meet, but nothing more. The district court found that although neither had any unusual circumstances or necessities, Oral Wagner is disabled due to bad knees and has diabetes that is controlled by medication, while Robisita Wagner has an iron deficiency for which she takes medication but is otherwise in good health.

[¶ 14] Specifically, regarding the parties' financial circumstances, the court found (emphasis added):

The Court previously distributed property the parties had in their possession. Oral owns 1930 acres of land that he bought before the parties met, with one exception. During the marriage, Oral sold 160 acres, but then bought another 160 acres closer to his house, so his total acreage remained the same. Robisita did not contribute in any way to

the purchase of the new 160 acres. Oral also has farm machinery and equipment. The evidence is that Oral owned all the machinery and equipment before the marriage. The machinery and equipment is all under a bank lien. The parties have three vehicles. No evidence was presented as to when the parties purchased the vehicles. Oral testified he would pay all the marital debts, so the source of the debts is not dispositive. The Rule 8.3 Property and Debt listing accurately sets out the marital assets and debts, and indicates a net marital estate of $332,505.55. This is somewhat deceiving in terms of property disposition, as $464,000 of the assets is land and $41,600 is farm machinery or equipment. *Both these categories of assets secure the debt. Therefore, there are no liquid assets other than the monthly rental payments.* ... That only leaves $1,000 per month plus Oral's disability payment, *unless the Court were to order Oral to sell land.*

[¶ 15] Despite finding a net marital estate of approximately $332,500, the district court found that because Robisita Wagner contributed little to the accumulation of the marital assets, she was "entitled to little of the assets." The district court ordered Oral Wagner to "pay Robisita $12,000 ($1,000 per year of marriage—1992 to 2004) in order for her to become established in a new living arrangement." The court stated, "Robisita will likely have to move elsewhere to find a job before she planned to, but Oral can only pay so much without the Court forcing him to sell large portions of land." Oral Wagner was permitted to retain all the other marital assets and assume all marital debts.

[¶ 16] Although we have generally said that liquidation of an ongoing farming operation is a last resort in dividing marital assets, we are not confronted here with an ongoing farming operation, but instead the primary use of the land is as rental property. Here, the district court was laboring to maintain the farm assets intact despite the lack of an ongoing farming operation and, in effect, was removing the property from consideration of an equitable distribution. Despite a long-term marriage of twelve years, which produced a child, and evidence that Robisita Wagner contributed significantly to the marriage by doing the bulk of the housework and childcare, it is unclear how the district court arrived at the $12,000 property division award to Robisita Wagner in light of the amount of the net marital estate. It is also unclear from the court's findings exactly what Oral Wagner's monthly income is, including the specific amount of his monthly social security disability payments.

[¶ 17] On this record, we conclude that the district court erred by limiting the property distribution to Robisita Wagner based on Oral Wagner's limited monthly income and in failing to consider liquidation of the farm property. We reverse and remand for reconsideration of the distribution of the parties' marital property to include consideration of liquidating the farm assets or assigning a portion of the property to Robisita Wagner.

### B

[¶ 18] This Court has also explained the relationship between the district court's consideration and award of property division and spousal support:

Property division and spousal support are interrelated and intertwined and often must be considered together. Spousal support determinations are findings of fact, and the district court's decision on spousal support will not be set aside unless it is clearly erroneous. In making a spousal support determination, the district court must consider the rele-

vant factors under the *Ruff–Fischer* guidelines.

*Kostelecky*, 2006 ND 120, ¶ 14, 714 N.W.2d 845 (citations omitted).

[¶ 19] The district court found that while Robisita Wagner has a business administration degree from a university in the Philippines, she has not used that degree and has some difficulty with English, making it harder for her to improve upon her station in life than for others of similar age and education. However, the district court also focused on the circumstances surrounding the origins of the marriage, i.e., that she was a "mail order bride" and that she left the Philippines "with the apparent expectation that Oral would provide for her needs." After twelve years of marriage which resulted in the birth of the parties' child, the origin of the marriage is of less importance.

[¶ 20] Because property division and spousal support are "interrelated and intertwined," we reverse and remand the district court's award of spousal support for consideration under the relevant factors of the *Ruff–Fischer* guidelines.

## III

[¶ 21] Robisita Wagner argues the district court erred in failing to award her attorney's fees.

[¶ 22] Under N.D.C.C. § 14–05–23, the district court in divorce proceedings has discretion to award attorney's fees. *Bertsch v. Bertsch*, 2006 ND 31, ¶ 8, 710 N.W.2d 113; *Reiser v. Reiser*, 2001 ND 6, ¶ 15, 621 N.W.2d 348. The court's award of attorney's fees is within its sound discretion and will not be set aside on appeal absent an abuse of that discretion. *Bertsch*, at ¶ 8; *Reiser*, at ¶ 15. The district court abuses its discretion when it misinterprets or misapplies the law.

*Bertsch*, at ¶ 8; *Heller v. Heller*, 367 N.W.2d 179, 184 (N.D.1985).

[¶ 23] This Court has previously provided the framework for courts considering an award of attorney's fees under N.D.C.C. § 14–05–23:

> In deciding whether to award attorney fees in a divorce action, the trial court must balance one [party's] needs against the other [party's] ability to pay. The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case. An award of attorney fees requires specific findings supported by evidence of the parties' financial conditions and needs.

*Bertsch*, 2006 ND 31, ¶ 8, 710 N.W.2d 113 (quoting *Reiser*, 2001 ND 6, ¶ 15, 621 N.W.2d 348). "In awarding attorney's fees, fault is a consideration only to the extent that one party has unreasonably escalated the fees." *Bertsch*, at ¶ 10.

[¶ 24] Here, the district court refused to award any attorney's fees, deciding instead that the parties would pay their own attorney's fees. The court reasoned: "Robisita commenced the divorce action because the parties 'just didn't get along any more,' a rather skimpy reason. However, once filed, the case likely got prolonged because of Oral's inaction." This is not, however, the correct analysis under N.D.C.C. § 14–05–23. Robisita Wagner's reason for commencing the divorce action is not a relevant factor for consideration. Although either party's fault is properly a factor only to the extent that a party has unreasonably escalated the fees, as we have explained, the appropriate analysis for awarding attorney's fees must include balancing one party's needs against the other's ability to pay.

[¶ 25] Because the district court failed to balance the parties' needs and abilities to pay, we conclude the court misapplied the law in considering whether to award Robisita Wagner attorney's fees. We therefore remand for a correct application of the law.

## IV

[¶ 26] Oral Wagner argues the district court erred in refusing to set his child support obligation at $182 per month retroactively to July 2005.

[¶ 27] Child support determinations involve questions of law subject to a de novo standard of review, findings of fact subject to a clearly erroneous standard of review, and may include matters of discretion subject to an abuse of discretion standard of review. *Marchus v. Marchus*, 2006 ND 81, ¶ 6, 712 N.W.2d 636; *Lukenbill v. Fettig*, 2001 ND 47, ¶ 9, 623 N.W.2d 7. The district court's decision in setting an effective date for a modified child support obligation is discretionary and, absent an abuse of discretion, will not be overturned on appeal. *Marchus*, at ¶ 6. The district court abuses its discretion if it acts arbitrarily, capriciously, or unreasonably, or it misapplies or misinterprets the law. *Id.*

[¶ 28] In the context of child support modification proceedings, we have explained the district court has continuing jurisdiction to modify child support. *Steffes v. Steffes*, 1997 ND 49, ¶ 14, 560 N.W.2d 888. However, a vested child support obligation may not be retroactively modified. *Id.*; *Brakke v. Brakke*, 525 N.W.2d 687, 690 (N.D.1994). "Generally, a modification of child support should be made effective from the date of the motion to modify, absent good reason to set some other date, and the 'court retains discretion to set some *later effective date*, but its reasons for doing so should be apparent or explained.'" *Marchus*, 2006 ND 81, ¶ 8,

712 N.W.2d 636 (emphasis in original) (quoting *Geinert v. Geinert*, 2002 ND 135, ¶ 10, 649 N.W.2d 237). *See also* N.D.C.C. § 14–08.1–05(1)(c) (stating due and unpaid child support not subject to retroactive modification). When the district court forgives past due child support obligations, it has modified a child support order. *Marchus*, at ¶ 8; *Morton County Soc. Serv. Bd. v. Hakanson*, 2003 ND 78, ¶ 7, 660 N.W.2d 599.

[¶ 29] In this case, Oral Wagner's original obligation arose from the partial default judgment entered in July 2005, which ordered Oral Wagner to pay $475 each month in child support. Oral Wagner subsequently retained counsel and in October 2005, sought relief from the partial default judgment. In support of his motion for relief from the partial default judgment, Oral asserted the child support calculations were not done in accordance with the child support administrative guidelines. The district court granted Oral Wagner's motion to vacate the partial judgment, except for certain enumerated issues. The district court acknowledged that the child support had been calculated incorrectly, but ordered that the child support obligation would remain at the amount originally ordered and that "[a]ny overage or arrearage in child support … shall be addressed at the trial." The effect of this order was to delay any modification and maintain the status quo for support of the minor child.

[¶ 30] This case eventually came to trial on June 1, 2006, before a different district court judge. The parties had agreed sometime before trial that the correct child support payment was $182 per month. However, the court specifically reserved for trial the issue of the date the agreed child support obligation began and how to handle any resulting overpayment. After

trial, in its order for judgment, the district court stated:

> Oral's child support obligation of $182 per month will commence June 1, 2006. The only reason the obligation was incorrectly calculated at the outset was Oral's failure to participate in the proceedings. Further, child support is for the child. To retroactively impose the current obligation would deprive the child of what is a minimal payment for 17.7 months or require some form of reimbursement. Neither of those choices is in [the child's] best interests.

[¶ 31] Here, the district court reserved the decision on the effective date to modify and correct Oral Wagner's child support obligation. Although Oral Wagner's motion to vacate the partial default judgment was initially made in October 2005, which first requested to modify and correct his child support obligation, the district court chose the date of the trial, June 1, 2006, as the effective date for the lower amount. The court reasoned that it was Oral Wagner's own failure to participate in the proceeding which originally resulted in the incorrect child support calculations and, further, that retroactively imposing the minimal amount or requiring reimbursement was not in the child's best interests.

[¶ 32] The district court's decision reflects it was the product of a rational mental process by which the facts of record and the law relied upon were considered together for purposes of achieving a reasonable determination, and we cannot conclude the district court acted in an arbitrary or capricious manner, or misapplied the law. We affirm the district court's decision setting the date of the modified child support obligation.

## V

[¶ 33] The district court judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

[¶ 34] MARY MUEHLEN MARING, DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.