# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 116

Ben Gerving,                                                    Plaintiff and Appellee

    v.

Janet Gerving,                                               Defendant and Appellant

    and

State of North Dakota,                         Statutory Real Party in Interest

### No. 20190253

Appeal from the District Court of Oliver County, South Central Judicial District, the Honorable John W. Grinsteiner, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Justin D. Hager, Bismarck, ND, for plaintiff and appellee.

Erica J. Shively (argued) and Christopher E. Rausch (appeared), Bismarck, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   Janet Gerving appeals from a judgment granting Ben Gerving a divorce and distributing their marital property.   Janet Gerving argues the district court's property distribution is clearly erroneous because it is not equitable and the court did not adequately explain the substantial disparity.   We affirm in part, reverse in part, and remand.

I

[¶2]   Ben and Janet Gerving were married in 2004 and have two minor children together.   In November 2017, Ben Gerving sued for divorce.

[¶3]   In January 2019, the parties filed a partial settlement agreement.   The parties agreed Ben Gerving would have primary residential responsibility for the children and Janet Gerving would have parenting time.   They agreed to a parenting time schedule, decision making responsibility, and to reserve the issue of child support.   The district court adopted the parties' partial settlement agreement and entered a partial judgment incorporating the terms of the agreement.

[¶4]   In May 2019, a bench trial was held on the remaining issues, including distribution of the marital estate and spousal support.   The district court found the length of the marriage would support an equal property division, but other factors had to be weighed, including that Ben Gerving acquired the real property and farm prior to the marriage, that he lived and worked on the farm his entire life, and that he did most of the work on the farm.   The court concluded Ben Gerving should be awarded the family farm, homestead, equipment, animals, and the accompanying debt.   The court ordered Ben Gerving was required to split the net proceeds of any future sale of the land with Janet Gerving.   The court ordered Ben Gerving to pay Janet Gerving $6,000 per year until Janet Gerving is 65 years old to offset the award of the farming operation, and awarded each party their separate retirement and bank accounts.   The court ordered neither party would be awarded spousal

support and each party was responsible for their own attorney's fees. The court also ordered Janet Gerving to pay $507 per month in child support. Judgment was entered.

## II

[¶5] Janet Gerving argues the district court's property distribution is clearly erroneous because it is not equitable and the evidence does not support the court's findings.

[¶6] The district court's property distribution will not be reversed on appeal unless the court's findings are clearly erroneous. *Brew v. Brew*, 2017 ND 242, ¶ 13, 903 N.W.2d 72. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if after viewing all of the evidence, we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶7] When a divorce is granted, the district court is required to make an equitable distribution of the parties' property and debts. N.D.C.C. § 14-05-24(1). The court must start with the presumption that all property held by either party, jointly or individually, is considered marital property. *Lee v. Lee*, 2019 ND 142, ¶ 12, 927 N.W.2d 104. All property held by either party must be included in the marital estate. *Lessard v. Johnson*, 2019 ND 301, ¶ 21, 936 N.W.2d 528. The court must determine the value of the entire marital estate and then apply the *Ruff-Fischer* guidelines to make an equitable distribution. *Allmon v. Allmon*, 2017 ND 122, ¶ 7, 894 N.W.2d 869; *Lessard*, at ¶ 21. The *Ruff-Fischer* guidelines include:

> The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

2

*Lessard*, at ¶ 21 (quoting *Tuhy v. Tuhy*, 2018 ND 53, ¶ 10, 907 N.W.2d 351). The court is not required to make findings about each *Ruff-Fischer* factor, but it must explain the rationale for its decision. *Wagner v. Wagner*, 2007 ND 101, ¶ 10, 733 N.W.2d 593. The court's property distribution does not need to be equal to be equitable, but the court must explain a substantial disparity. *Lessard*, at ¶ 21.

[¶8] "North Dakota law does not mandate a set formula or method to determine how marital property is to be divided; rather, the division is based on the particular circumstances of each case." *Wagner*, 2007 ND 101, ¶ 11, 733 N.W.2d 593 (quoting *Holden v. Holden*, 2007 ND 29, ¶ 10, 728 N.W.2d 312). A long-term marriage generally supports an equal property division. *Lessard*, 2019 ND 301, ¶ 21, 936 N.W.2d 528. "While the origin of property must be considered, there is no requirement to set property aside for a spouse who brings property into a marriage." *Lee*, 2019 ND 142, ¶ 12, 927 N.W.2d 104. We have recognized liquidation of an ongoing farming operation is generally a last resort, and the distribution of farm assets to one spouse with an offsetting monetary award to the other spouse may be upheld. *Wagner*, at ¶ 11.

[¶9] The district court adopted the parties' final Rule 8.3 property and debt listing as a full list of the parties' assets and debts and found the parties have $1,850,000 in assets, $264,000 in debts, with a net marital estate worth $1,586,000. The court made findings about the *Ruff-Fischer* factors to divide the martial estate. The court found both parties are 49 years old and have a high school education, and neither party has any physical limitations that would hinder their ability to earn a living. The court found the parties own and operate a farm and Ben Gerving inherited the farming operation and real property prior to the marriage. The court found the parties have cattle and smaller animals and crop and pastureland, and both parties worked together on the farm but Janet Gerving did less work in the last few years. The court found the farm supported the family early in the marriage, but Ben Gerving was ill in 2007 and was unable to work, the illness caused the parties to sell their milk cows in 2007 and begin renting out some or most of the land, Ben Gerving began working off the farm after his health recovered, and Janet Gerving began working off the farm in 2008. The court found the parties

3

currently rent out the land, work some cattle, and plant crops or hay for animal feed, but the farming operation is operating at a loss according to the tax returns. The court found the parties' high net worth was mostly due to the land value, the parties are cash poor and live paycheck to paycheck, the parties rent out three parcels of land and use the rent to make the spring loan payment, and the parties use the proceeds from the cattle sales to make the fall loan payment. The court found both parties testified they do not want to sell the farm and would like to pass it on to their children, and Ben Gerving testified he wanted to continue farming. The court found the parties will have a similar station in life post-divorce because their current employment income is similar and neither party has any unusual circumstances or necessities.

[¶10] The district court found the length of the marriage supported an equal division, but other factors had to be considered, including that Ben Gerving acquired the land prior to the marriage, he lived and worked on the farm his entire life, and he did most of the work on the farm. The court found Janet Gerving's contribution to the farm did not grow or expand the farming operation. The court awarded Ben Gerving most of the parties' property, including all of the real property, the farm equipment and animals, the accompanying debt, and some vehicles. The court explained:

> According to the testimony and evidence this appears to be the only way the family farm will survive. Any division would likely be the final straw. In addition, it was the wish of the parties that the property not be sold if possible and for it [to] pass to the children. Based on its current income producing capabilities, this award only becomes a windfall if the farmland is sold. As a protection against such, should any of the land need to be sold or if Ben elects to sell any of the land, all net proceeds from the sale would then be split equally with Janet. The small income producing capabilities, animals, and equipment of the farm will be offset with a yearly payment to Janet by Ben. Should the sale of land become necessary the yearly payment can be revisited and adjusted accordingly.

The court ordered Ben Gerving pay Janet Gerving $6,000 per year until her 65th birthday to offset the award of the farming operation, and the court

retained jurisdiction of the payment to allow the payment to be revisited if Ben Gerving sells any of the land. The court explained:

> This yearly payment, which effectively offsets Janet's child support obligation, along with the unequal award of retirement accounts serves as the equitable division of the potential farming proceeds. Janet is receiving $96,000 in payments over the next sixteen (16) years and approximately $67,500 more in retirement, amounting to an award of $163,500 to offset the farming operation award to Ben.

Each party was awarded their personal possessions, retirement accounts, and individual credit card debt.

[¶11] This was a long-term marriage, which produced two children, and there was evidence both parties contributed to the marriage and the farming operation. Evidence established both parties have full time jobs off the farm and both parties have worked on and contributed to the farming operation. Evidence established Ben Gerving has worked for the county full time since 2007 and his gross monthly income from the job is approximately $3,794. Evidence established Janet Gerving worked full time outside the home as a CNA, her gross monthly income is $2,862, and her employment provided health insurance for the family. Ben Gerving testified Janet Gerving did some work on the farm including the bookkeeping, milking the cows until 2007 when they got rid of the milk cows, feeding and helping with the small animals, and occasionally feeding the large animals. Both parties testified it was Janet Gerving's job to take care of the small animals on a daily basis. Ben Gerving testified he was sick and hospitalized for four months in 2007, he was unable to work during that time, and Janet Gerving managed the farm and cared for the animals while he was sick. Janet Gerving testified she did the day-to-day chores around the farm while Ben Gerving was sick. The court found Ben Gerving acquired the land before the marriage. However, Janet Gerving also contributed to the property. She testified that they put a new house on the property in 2006 and they both paid for the house.

[¶12] Janet Gerving received a net property award of approximately $163,500 and Ben Gerving received the remainder of the property and debt, for a net

award of approximately $1,422,500. Ben Gerving was awarded approximately ninety percent of the marital estate, including all of the parties' real property and all of the assets related to the farming operation. Although this Court has recognized the importance of preserving the viability of a family farming operation, we have said it should not result in a windfall for one spouse. *Linrud v. Linrud*, 552 N.W.2d 342, 346 (N.D. 1996). The district court reasoned its distribution would only become a windfall if the real property was sold, and to ensure that does not occur the court ordered Ben Gerving to split all net proceeds from any future sale of the property equally with Janet Gerving and the yearly payment could be adjusted if a land sale became necessary. However, the court cannot retain jurisdiction to modify a final property distribution. *See Jacobs-Raak v. Raak*, 2020 ND 107, ¶ 10; *Keita v. Keita*, 2012 ND 234, ¶ 28, 823 N.W.2d 726. The court erred by attempting to retain jurisdiction to ensure the distribution remained equitable.

[¶13] Evidence exists in the record that both parties contributed to the farming operation. Janet Gerving contributed to the farm and family by working full time off the farm, providing medical insurance, and by working on the farm. Ben Gerving was awarded ninety percent of the parties' assets, including all of the real property and any assets related to the farming operation. We conclude the property distribution is not equitable.

[¶14] This Court has previously reversed similar property distributions. In *Wagner v. Wagner*, 2007 ND 101, ¶¶ 1, 7, 733 N.W.2d 593, this Court reversed a property distribution in which the net marital estate was worth $332,500, the wife received a property award of $12,000 and spousal support of $200 per month for two years, and the husband received the remainder of the marital assets and all marital debts. The district court explained its distribution by finding the wife was "entitled to little of the assets" because she contributed little to the accumulation of the assets. *Id.* at ¶ 15. This Court acknowledged the district court was attempting to preserve farm property, but concluded:

> Although we have generally said that liquidation of an ongoing farming operation is a last resort in dividing marital assets, we are not confronted here with an ongoing farming operation, but instead the primary use of the land is as rental

6

property. Here, the district court was laboring to maintain the farm assets intact despite the lack of an ongoing farming operation and, in effect, was removing the property from consideration of an equitable distribution.

*Id.* at ¶ 16. This Court concluded the district court erred in limiting the property distribution to the wife based on the husband's limited income and by failing to consider liquidation of the farm assets. *Id.* at ¶ 17.

[¶15] Similarly, in this case it is clear the district court was attempting to keep the farming operation viable and respect the parties' desire to keep the real property available for the parties' children, but there are other ways it can be accomplished with an equitable distribution and without limiting the distribution to Janet Gerving based on what Ben Gerving can afford to pay. Most of the parties' land is being used as rental property. Evidence established the farm is made up of four parcels of land, Ben Gerving testified that he uses the land to plant grain and make hay for the animals, that he rents out cropland in three of the parcels, and that the rent is used to pay on the loan from the bank. Ben Gerving testified he would not have any problem with whatever the court does with the land, including giving some to Janet Gerving, as long as it is saved for their children. He testified there was one parcel of land he could do without and keep the farm operational. Janet Gerving testified she did not have any plans to sell the land if it was awarded to her. She also testified that she understood that she may receive some of the debt if she is awarded some of the land, she would rent the land out, and she was willing to rent it to Ben Gerving if he needed it for the farming operation.

[¶16] On this record, we are left with a definite and firm conviction a mistake has been made, and we conclude the district court's property distribution is clearly erroneous. We reverse and remand for the court to make an equitable property division.

III

[¶17] Janet Gerving argues the district court erred by failing to find Ben Gerving committed economic misconduct. She alleges Ben Gerving sold cattle

7

under his sisters' names and the sisters returned the money from the sales to him which allowed him to hide the income.

[¶18] "Economic misconduct is misconduct that results in a wasted asset or in the reduction of the net marital estate." *Weigel v. Weigel*, 2015 ND 270, ¶ 22, 871 N.W.2d 810 (quoting *Hoverson v. Hoverson*, 2001 ND 124, ¶ 24, 629 N.W.2d 573). Economic fault or financial misconduct are factors that may be considered in distributing marital property. *Id.* A court's findings about economic fault are findings of fact, subject to the clearly erroneous standard of review. *Conzemius v. Conzemius*, 2014 ND 5, ¶ 22, 841 N.W.2d 716.

[¶19] The district court found Ben Gerving acknowledged selling cattle under other people's names, he explained he owed his sister money for her help with expenses or for equipment she purchased for the farm, he gave his sister the cattle in exchange for her help, and he admitted that some of the proceeds were given back to him but they were used for farm expenses. The court found Ben Gerving testified Janet Gerving was aware this was how they operated and she did not have a problem with it when she was living on the farm. The court found:

> During Janet's testimony she acknowledged handling the books and taxes for the farm the years she lived there. She questioned some of the sales of cattle/calves, especially since the separation, but seemed to stop short of accusing Ben of hiding cattle sale proceeds. It would appear from the testimony and evidence that Ben is struggling with handling the finances and bill paying since the separation. While there are questions about some of the finances, the Court doesn't find any evidence of intentional misconduct; instead the questions seemed to be caused more from lack of records and lack of money management skills rather than misconduct.

[¶20] Ben Gerving testified he gave some cattle to his sister because he borrowed money from her to pay the land taxes, they used the same practice in the past, and it did not bother Janet Gerving. There was evidence Ben Gerving used the proceeds he received from selling cattle in other people's names to pay bills and other farm expenses. Evidence supports the court's

findings. The court's finding that there was no evidence of economic misconduct is not clearly erroneous.

## IV

[¶21] We affirm the judgment in part, reverse in part, and remand.

[¶22] Lisa Fair McEvers
Gerald W. VandeWalle
Jerod E. Tufte
Daniel J. Crothers
Jon J. Jensen, C.J.