2003 ND 123

**Cheryl L. BLADOW, Plaintiff and Appellant,**

v.

**Bruce A. BLADOW, Defendant and Appellee.**

**No. 20030011.**

Supreme Court of North Dakota.

July 18, 2003.

Michael L. Gjesdahl, Gjesdahl & Associates, Fargo, for plaintiff and appellant.

Jerilynn Brantner Adams, Vogel Law Firm, Fargo, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Cheryl Bladow is appealing an East Central Judicial District Court judgment granting Bruce Bladow an equal distribution of the marital estate. Cheryl Bladow argues the district court erred in dividing the marital estate in half, because the majority of the parties' total estate consists of her personal injury settlement. She argues the district court's findings of fact, taken as a whole, were clearly erroneous and led to an inequitable distribution of the parties' property. We affirm the judgment of the district court.

I

[¶ 2] The parties were married in Fargo, North Dakota, on August 22, 1986. At the time of the marriage, the parties moved into Bruce Bladow's home, which had a fair market value of $55,500 and on which he owed between $15,000 and $17,000 on the first mortgage. The parties satisfied the mortgage in 1993, and sub-stantial improvements were made on the home during the marriage. From August of 1988 until May 2001, Cheryl Bladow worked at the Southeast Human Service Center as a therapist and, later, as a supervisor. In July 1999, she opened a rubber stamp business called "Border Buddies," which has held a deficit. During the entire marriage, Bruce Bladow worked a variety of intermittent jobs. The two parties made equal contributions during the first two years and the last four years of the marriage. During the middle ten years of the marriage, Cheryl Bladow made the majority of financial contributions. In February 2001, she received a $650,000 personal injury settlement for personal injuries and pain and suffering from taking the drug Phen–Fen. Her net settlement after fees and costs was $430,970.39, and of that amount, the district court concluded she dissipated $105,948.70. The settlement check was written out jointly to Cheryl L. Bladow and Bruce Bladow, and both parties signed a "confidential, release, indemnity, and assignment agreement." The trial was held on September 17–18, 2002. The district court found the parties' marital estate had a value of $427,151.56, of which $325,021.69 was traceable to Cheryl Bladow's settlement. The district court awarded $213,639.56 to her and $213,512.00 to him.

[¶ 3] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

II

[¶ 4] Cheryl Bladow argues the district court erred in dividing the marital estate in half, because the majority of the parties' total estate consists of her personal injury settlement. She argues she should be awarded the entire amount of her settle-

ment because it was compensation for her personal injuries and pain and suffering, not for a loss of wages, and Bruce Bladow was not a party to her action. She argues this Court should find that personal injury awards should be distributed to the recipient unless *Ruff–Fischer* guidelines would force a different result. She argues the court erred in finding she intended to make the settlement proceeds part of the marital estate.

[¶ 5] "A trial court's findings on matters of property division will not be set aside on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a), or they are induced by an erroneous view of the law." *Wald v. Wald,* 556 N.W.2d 291, 294 (N.D.1996). Section 14–05–24, N.D.C.C., requires the court to make an equitable distribution of the marital estate. *Hendrickson v. Hendrickson,* 553 N.W.2d 215, 220 (N.D.1996). It is well-settled that a property division need not be equal to be equitable, but a substantial disparity must be explained. *Fisher v. Fisher,* 1997 ND 176, ¶ 15, 568 N.W.2d 728.

[¶ 6] " *'[A]ll* of the real and personal property accumulated by the parties ..., regardless of the source' must be included in the marital estate to be divided by the trial court." *Glander v. Glander,* 1997 ND 192, ¶ 10, 569 N.W.2d 262 (quoting *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 621 (N.D.1994)). We have repeatedly held that "[s]eparate property, whether inherited or otherwise, must initially be included in the marital estate." *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 621 (N.D.1994) (citations omitted). *See also Grinaker v. Grinaker,* 553 N.W.2d 204, 208 (N.D.1996); *van Oosting v. van Oosting,* 521 N.W.2d 93, 96 (N.D.1994).

[¶ 7] After a trial court has included all of the assets in the marital estate, it considers the *Ruff–Fischer*

guidelines in its distribution of the assets to the parties. *Weigel v. Weigel,* 2000 ND 16, ¶ 6, 604 N.W.2d 462. The *Ruff–Fischer* guidelines are a list of factors used by trial courts in dividing marital property and awarding spousal support. The guidelines originate from *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966).

> "Considered under the *Ruff–Fischer* guidelines are: the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination."

*Weigel,* at ¶ 6 (quoting *Wilhelm v. Wilhelm,* 1998 ND 140, ¶ 11, 582 N.W.2d 6).

[¶ 8] The origin of the property is only one factor to consider under the *Ruff–Fischer* guidelines, even if the property was acquired before the marriage or was inherited. *Winter v. Winter,* 338 N.W.2d 819, 822 (N.D.1983). We have never held that property brought into a marriage or acquired by gift or inheritance by one spouse must be irrevocably set aside to that spouse. *Grinaker,* 553 N.W.2d at 208. As we held in *Gaulrapp,* 510 N.W.2d at 621, the length of the marriage is relevant to the distribution of gifts and inherited property as part of the "equitable" division of the marital estate. In general, a lengthy marriage supports an equal division of all marital assets. *Glander,* 1997 ND 192, ¶ 11, 569 N.W.2d 262.

■ [¶ 9] Cheryl and Bruce Bladow had been married for 16 years at the time of the divorce trial. The district court found the parties jointly agreed to use the proceeds of the Phen–Fen settlement to pay off the two mortgages against the home, totaling $35,274.75, and to invest $4000 in each party's IRA account and $150,000 in a joint investment account through Primerica. The court found the parties jointly agreed to buy a 2001 Jeep Cherokee for her, and pay off the remaining debt of between $6,000–$7,000 on his Ford Ranger. The court found the parties further agreed to put $100,000 into an investment account solely in her name, pay off her business debt of approximately $7,000, and send her on a vacation to Salt Lake City. The court found she dissipated the remainder of the proceeds without discussion or consent from him. The proceeds of a personal injury settlement received during the marriage are part of the marital estate, and their distribution is part of the equitable distribution of property in a divorce. *Gronland v. Gronland,* 527 N.W.2d 250, 252 (N.D.1995).

[¶ 10] Cheryl Bladow argues the district court's findings of fact, taken as a whole, were clearly erroneous. She argues the court erred in not giving enough weight to the evidence tending to prove that she was the primary wage earner. She further argues that the court erred in giving too much weight to the evidence tending to prove that Bruce Bladow helped with the cooking and household chores and contributed to paying the monthly bills, and that she accumulated the majority of the marital credit card debt. She also argues that because she has not been able to work and currently needs the personal injury award to pay her living expenses, the court erred in finding she was able to earn enough to pay for her own normal living expenses.

[¶ 11] The district court found that "[o]ver the course of the parties' marriage, Cheryl used numerous credit cards and incurred significant credit card debt. On a number of occasions, the parties refinanced the home, in part, to pay off this credit card debt." The court specifically set out the loans taken by the Bladows and what debt the loans covered. The district court also found that "[b]oth parties are employed on a full-time basis and able to earn sufficient income to pay for their normal living expenses." The court stated:

Although Cheryl has shown a greater income producing capacity than Bruce, Cheryl's spending habits have resulted in substantial credit card debt. A considerable portion of the phen-fen settlement proceeds were used to pay off credit card debt and put into joint investment accounts, which shows an intent not to keep the settlement as separate property. The portion of the settlement proceeds which were jointly invested or used to pay off debts has benefitted the parties. The portion Cheryl spent on personal and business expenses has been dissipated with essentially nothing to show for it.

Under the *Ruff–Fischer* guidelines, a substantially disparate asset and debt allocation in Cheryl's favor is not justified or equitable in this case.

[¶ 12] The trial court considered all of the facts of the case against the *Ruff–Fischer* guidelines, and we do not conclude that the district court's property division under the guidelines was clearly erroneous.

### III

[¶ 13] The district court did not err in its property division to Cheryl and Bruce Bladow. We affirm.

[¶ 14] GERALD W. VANDE WALLE, C.J., JOHN C. McCLINTOCK, JR., District Judge, WILLIAM A. NEUMANN and MARY MUEHLEN MARING, JJ., concur.

[¶ 15] The Honorable JOHN C. McCLINTOCK, JR., District Judge, sitting in place of KAPSNER, J., disqualified.