2008 ND 58

**Lois Konzak HITZ, n/k/a Lois Ann Marie Konzak, Plaintiff and Appellant**

v.

**John William HITZ, Defendant and Appellee.**

**No. 20070211.**

Supreme Court of North Dakota.

March 24, 2008.

Todd W. Foss (argued), Stefanson, Plambeck & Foss, Moorhead, MN, for plaintiff and appellant.

Sherry Mills Moore (argued), Bismarck, ND, for defendant and appellee.

KAPSNER, Justice.

[¶1] Lois Konzak Hitz ("Konzak") appeals an amended judgment dividing marital property between her and her former husband, John Hitz ("Hitz"). We affirm the amended judgment.

I

[¶2] Konzak and Hitz were married June 25, 1994. Konzak commenced a divorce action in January 2005. Following post-trial briefing, an amended judgment, dividing and distributing the debts and assets between Konzak and Hitz, was entered in May 2007. In its findings of fact, conclusions of law, order for amended judgment and amended judgment, the district court awarded net property of $1,257,409 to Hitz and $334,206 to Konzak before adjustments. The court made an adjustment for post-separation property and debt, adding $12,000 to Hitz's net property and $179,934 to Konzak's net property. Hitz was also ordered to pay Konzak $160,000 in cash. After the adjustment and the cash payment, the district court awarded Hitz 62 percent and Konzak 38 percent of the net marital estate.

[¶3] Konzak was born in 1953. She obtained a pharmacy degree from North Dakota State University in 1976. Following her graduation, Konzak worked at various pharmacies. Prior to her marriage to Hitz, Konzak lived on a hobby farm near Duluth, Minnesota. The hobby farm consisted of a house and barn located on six acres of land; Konzak was purchasing the property on a contract for deed. According to Konzak, by 1995, the hobby farm was nearly paid off. Konzak also entered the marriage with a parcel of undeveloped real estate, which adjoined her hobby farm. At the time she married Hitz, she owed $16,850 on the undeveloped parcel. Konzak testified she thought she had re-tirement accounts at the time of marriage, valued at about $75,000; however, the statements closest to the marriage showed she had $33,286 in the accounts. She owned a 1976 Ford one-ton truck, a 1985 Toronado, and a 1992 Chrysler LeBaron. On the LeBaron, Konzak owed $8,884 at the time of marriage. Konzak also entered the marriage with some personal property, including livestock and family heirlooms. Konzak worked as a pharmacist at Fort Totten Indian Health Services. During the time she worked at Fort Totten, Konzak made between $35,000 and $60,000 per year. She continued her employment at Fort Totten through 2002, when she left work due to severe depression. Since leaving her job in 2002, Konzak worked part time at a drug store in Devils Lake and received disability income in the amount of $3,200 per month after taxes and deductions for insurance premiums.

[¶4] At the time of the marriage, Hitz was farming 256 acres he owned debt free and 874 acres he was buying from his mother on a contract for deed. The contract for deed with his mother was the only substantial debt Hitz had at the time of marriage. Hitz also rented other farmland. Hitz entered the marriage with personal property, including livestock and farm equipment. Hitz's income varied considerably from year to year. In January 1994, around the time the couple married, a Farm Credit Services balance sheet showed Hitz's net worth to be $364,992. At trial, the district court valued his net worth at the time of marriage to be $452,495, due in part to the fact that he was purchasing the acreage from his mother below fair market value.

[¶5] After Konzak and Hitz began living together in 1993 and married in 1994, Konzak rented out her hobby farm and used the rental profits to pay the loan on

the adjoining undeveloped real estate. In 1998, Konzak sold her undeveloped, unimproved parcel of land for $350,000. Konzak used the sale proceeds from this real estate to purchase 317 acres of farmland in Wells County, North Dakota, for the sum of $140,000. The money from Konzak's farm also purchased an additional 157 acres, called the Kucera property, for $91,000.

[¶ 6] In 1995, Konzak and Hitz purchased a home in New Rockford, North Dakota, which they moved to the Hitz farmstead. Konzak testified at trial that the purchase price of the home was $58,000, and the cost of moving the house was $12,780. She testified the money for the purchase of the home came from a mortgage loan the parties obtained in the amount of $46,400. She testified she paid the mortgage off three years later with money she received from the sale of her hobby farm, which she sold in 1996 for $75,000. She testified the costs for moving the home, along with additions and improvements, were paid from the parties' joint funds and with money from Konzak's Edward Jones account. Hitz testified he paid between $125,000 and $135,000 towards the house from the parties' Security State Bank account and alleged that the bulk of the money in that account came from his farming income. During the marriage, the parties also purchased an additional quarter of land for $65,000 in 2004. In January 2005, after the parties had separated, Konzak's mother gave a house to Konzak. Konzak later inherited several other parcels of land before the divorce action was completed.

[¶ 7] At the time of separation, Konzak withdrew $60,000 from the parties' farm operating loan account, spent $100,000 to restore the house given to her by her mother, which was valued after improvements at approximately $29,000, and withdrew $35,000 from her own retirement account. She also incurred additional credit card debt and debt to friends and family. The district court noted that in the 22 months following the parties' separation, Konzak acquired nearly $180,000 in new debts. The court also noted that little of the debt incurred was spent in a manner that increased the parties' net worth and found Konzak's actions constituted economic waste, which would be considered in making the property distribution.

[¶ 8] The district court awarded Hitz 62 percent and Konzak 38 percent of the net estate of the parties. Before making this disparate division, the court included all of the assets and debts and analyzed all of the *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952)–*Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966) factors.

[¶ 9] Konzak appeals, arguing the district court erred in failing to divide the property equitably between the parties, misclassified the marriage as a relatively short-term marriage, and erred in applying post-separation spending adjustments.

## II

[¶ 10] " 'We review a district court's determinations regarding the division of property as findings of fact, and we will not reverse unless the findings are clearly erroneous.' " *Lorenz v. Lorenz*, 2007 ND 49, ¶ 5, 729 N.W.2d 692 (quoting *Dvorak v. Dvorak*, 2005 ND 66, ¶ 20, 693 N.W.2d 646). A finding of fact is clearly erroneous when it is induced by an erroneous view of the law, there is no evidence to support it, or when, although there is some evidence to support it, after a review of the entirety of the evidence, this Court is left with a definite and firm conviction a mistake has been made. *Lorenz*, at ¶ 5 (citing *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 8, 714 N.W.2d 845). This Court views the evidence in the light most favorable to the

findings, and the district court's findings of fact are presumptively correct. *Lorenz*, at ¶ 5 (citing *Striefel v. Striefel*, 2004 ND 210, ¶ 8, 689 N.W.2d 415).

[¶ 11] "[A] trial court must start with a presumption that all property held by either party whether held jointly or individually is to be considered marital property. The trial court must then determine the total value of the marital estate in order to make an equitable division of property." *Ulsaker v. White*, 2006 ND 133, ¶ 13, 717 N.W.2d 567. "After a fair evaluation of the property is made, the entire marital estate must then be equitably divided between the parties under the *Ruff–Fischer* guidelines." *Id.* (citing *Neidviecky v. Neidviecky*, 2003 ND 29, ¶ 10, 657 N.W.2d 255). The *Ruff–Fischer* guidelines require a district court to consider the following factors in determining how to equitably divide the marital estate:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

*Bladow v. Bladow*, 2003 ND 123, ¶ 7, 665 N.W.2d 724 (internal quotations omitted).

[¶ 12] After calculating the entire marital estate, the district court, in considering the *Ruff–Fischer* factor regarding the origin of property, found Hitz entered the marriage with nearly twice as much in assets as Konzak. Konzak contends the court clearly erred in determin-ing Hitz held twice as much property at the time of marriage. "A trial court's valuation of property is a finding of fact that is presumptively correct and subject to the clearly erroneous standard of review." *Hoverson v. Hoverson*, 2001 ND 124, ¶ 13, 629 N.W.2d 573 (citing *Peterson v. Peterson*, 1999 ND 191, ¶ 12, 600 N.W.2d 851). At trial, the court was presented with balance sheets for farm operating loans, which valued Hitz's real and personal property around the time of marriage. Hitz testified the loan balance sheets undervalued his property, because the real property he purchased from his mother was purchased for less than fair market value. He testified that the loan balance sheet underestimated the value of his livestock, because the lending institution requested he assign conservative values to his livestock for the purpose of securing the loan. Hitz further submitted professionally prepared appraisals as exhibits during the trial, which valued the property he purchased from his mother at a greater value than that shown on the loan balance sheets.

[¶ 13] Konzak argues the figures on the loan balance sheet should have been used to determine Hitz's premarital holdings and his property should not be viewed as undervalued on the loan balance sheets, despite Hitz's testimony and professional appraisals. The district court determined, based on Hitz's testimony, the balance sheets, and professional appraisals, that Hitz's net worth at the time of marriage was nearly twice that of Konzak. While Hitz and Konzak presented different testimony about their respective net worths at the time they were married, "[a] trial court, having the opportunity to observe demeanor and credibility, is in a far better position than an appellate court in ascertaining the true facts regarding property value." *Hoverson*, at ¶ 13 (citing *Pe-*

*terson,* at ¶ 12). "A marital property valuation within the range of the evidence is not clearly erroneous." *Id.* (citing *Peterson,* at ¶ 12). "A choice between two permissible views of the evidence is not clearly erroneous when the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." *Fox v. Fox,* 2001 ND 88, ¶ 14, 626 N.W.2d 660 (citations omitted). In this case, the district court was presented with conflicting evidence that gave a range for the property valuations. The district court assigned values to the property within the ranges presented. The property valuation is not clearly erroneous.

 [¶ 14] Konzak next argues the district court misapplied the law when it failed to include the gift properties she received or inherited late in the marriage for the purposes of calculating the parties' "premarital assets." Konzak's argument is misplaced. As this Court explained in *Young v. Young,* 1998 ND 83, ¶ 10, 578 N.W.2d 111:

> " '[A]ll of the real and personal property accumulated by the parties ..., regardless of the source' must be included in the marital estate to be divided by the trial court." *Glander v. Glander,* 1997 ND 192, ¶ 10, 569 N.W.2d 262 (quoting *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 621 (N.D.1994) (emphasis in original)). We have repeatedly held "[s]eparate property, whether inherited or otherwise, must initially be included in the marital estate." *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 621 (N.D.1994) (citations omitted). *See also Grinaker v. Grinaker,* 553 N.W.2d 204, 208 (N.D. 1996); *van Oosting v. van Oosting,* 521 N.W.2d 93, 96 (N.D.1994). We have held a trial court can only apply the *Ruff–Fischer* guidelines *after* all the assets are included in the marital estate.

*Gaulrapp,* 510 N.W.2d at 621 (emphasis ours). The origin of the property is only one factor to consider under the *Ruff–Fischer* guidelines, even if the property was acquired before the marriage or inherited. *Winter v. Winter,* 338 N.W.2d 819, 822 (N.D.1983). We have never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse. *Grinaker,* 553 N.W.2d at 208.

 [¶ 15] After the district court considered all of the marital property, it considered the origin of the property, which is a permissible factor to consider when dividing the marital estate under the *Ruff–Fischer* guidelines. The district court determined Hitz was entitled to a greater distribution, in part, based on the determination that Hitz brought nearly twice as much property into the marriage. The district court considered the fact that Konzak received or inherited certain properties late in the marriage; these properties were properly included in the district court's calculation of the marital estate. Treating such property as premarital would have been contrary to the facts. Treating Konzak's inherited property as premarital and failing to include it in the marital estate would have been error. *Ulsaker v. White,* 2006 ND 133, ¶ 13, 717 N.W.2d 567 ("[A] trial court must start with a presumption that all property held by either party whether held jointly or individually is to be considered marital property."). In addition to considering the origin of the property, the district court found Konzak committed economic waste or misconduct after the parties separated, and Hitz was equitably entitled to a greater share of the marital estate based upon the *Ruff–Fischer* factor that considers the conduct of a party during the marriage and the financial circumstances of the par-

ties. "Under the *Ruff–Fischer* guidelines, both economic and noneconomic fault are proper factors for the trial court to consider in dividing marital property." *McDowell v. McDowell*, 2001 ND 176, ¶ 6, 635 N.W.2d 139 (citations omitted). Because the origin of the property is only one factor to consider, and because this Court has "never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse," the district court did not err as a matter of law in deciding Hitz was entitled to a greater share of the marital estate. *Young*, at ¶ 10 (citations omitted).

[¶ 16] Konzak argues the district court erred in determining the parties shared a relatively short-term marriage. " '[A] property division need not be equal to be equitable, but a substantial disparity must be explained.' " *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 23, 673 N.W.2d 601 (quoting *Bladow v. Bladow*, 2003 ND 123, ¶ 5, 665 N.W.2d 724) (alterations in original). " 'In general, a lengthy marriage supports an equal division of all marital assets.' " *Amsbaugh*, at ¶ 23 (quoting *Bladow*, at ¶ 8). There is no bright-line rule to determine whether a marriage should be deemed short-or long-term. *See Orgaard v. Orgaard*, 1997 ND 34, ¶ 11, 559 N.W.2d 546 (finding that an 11–year marriage is "relatively short-lived"); *Ulsaker v. White*, 2006 ND 133, ¶ 14, 717 N.W.2d 567 (finding a 16–year marriage was a long-term marriage). In this case, Hitz and Konzak were married for over ten years, during which time they had no children and kept their finances relatively separate. Based upon the length of their marriage and the nature of their relationship, it would not be clear error to class the marriage as relatively short-term. Even if the marriage had been deemed a long-term marriage, the district court based its distribution on several other factors, including Konzak's economic misconduct and the origin of each parties' property. All of the relevant factors are to be considered, and the length of the marriage does not necessarily carry any greater weight than the other factors.

[¶ 17] For these reasons, the factual findings of the lower court were not clearly erroneous and the district court did not err as a matter of law. We affirm the amended judgment.

[¶ 18] GERALD W. VANDE WALLE, C.J., and WILLIAM F. HODNY, S.J., and DALE V. SANDSTROM, DANIEL J. CROTHERS., concur.

[¶ 19] The Honorable WILLIAM F. HODNY, S.J., sitting in place of MARING, J., disqualified.