Filed 4/4/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 48

Carl Michael Hoverson,                                                                  Plaintiff, Appellee 

                                                                                                         and Cross-

Appellant

v.

Sandra Morten Hoverson,                                                          Defendant, Appellant 

                                                                                                       and Cross-Appellee

No. 20120281

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Sonja Clapp, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Scott D. Jensen, P.O. Box 5849, Grand Forks, N.D. 58206-5849, for plaintiff, appellee and cross-appellant.

Robert J. Schultz (argued) and Anna K. Schultz (appeared), P.O. Box 2686, Fargo, N.D. 58108-2686, for defendant, appellant and cross-appellee.

Hoverson v. Hoverson

No. 20120281

Maring, Justice.

[¶1] Sandra Hoverson appeals and Carl Hoverson cross-appeals from a divorce judgment distributing the parties’ marital estate and ordering Carl Hoverson to pay Sandra Hoverson $3,000 per month for spousal support for two years, $3,002 per month for child support, and attorney’s fees.  The parties’ arguments raise issues about the property distribution, the duration and amount of spousal support, the propriety and the amount of an upward deviation for child support, and the award of attorney’s fees.  We affirm.

I

[¶2] Carl and Sandra Hoverson met in February 2004, when he was 49 years old and she was 42 years old.  They were married in May 2004, and had one child together in 2005.  Their marriage was his second, 
see
 
Hoverson v. Hoverson
, 2001 ND 124, 629 N.W.2d 573, and her fourth.  

[¶3] When the parties met, Sandra Hoverson was living in Florida, where she owned a home.  She graduated from high school in Larimore and received subsequent training as a radiologic technician, working as a trauma CT scan technician and as a mobile MRI technician for about three years before becoming employed at a Florida hospital in 1991.  In 2003, she earned about $57,000.  She earned about $31,000 during the first six months of 2004, before she quit her job shortly after the parties’ marriage.  According to her, she had maintained her license, but the technology had advanced after she quit work in 2004 and she was not interested in going back to work as a radiologic technician.  

[¶4] Carl Hoverson was raised near Grand Forks.  He graduated from high school in 1973 and attended college for about one year before beginning farming with his father in 1975.  After his father died, Carl Hoverson started his own farming operation in 1976.  In 1994, he and Ron Offut established Hoverson Farms LLP as an equal partnership with Carl Hoverson in charge of the day-to-day operations of the partnership.  Hoverson Farms has become a successful potato farming operation, and the district court valued Carl Hoverson’s share of the partnership at $9,530,017.  In 2008, Carl Hoverson formed land holding companies, CHF Huntsville LLC, CMC Farms LLC, and CHF Union Lake LLC, with two sons from his prior marriage.  Two of those companies, CHF Huntsville and CMC Farms, lease farmland to Hoverson Farms, and CHF Union Lake owns lake property.  The district court valued Carl Hoverson’s interest in CHF Huntsville at $963,540, his interest in CMC Farms at $2,999,360, and his interest in CHF Union Lake at $134,000. Carl Hoverson earns a substantial income from his farming ventures, and the district court found his average yearly income from 2004 through 2010 was $1,635,307.  

[¶5] During periods of their marriage, the parties lived separately, with Sandra Hoverson maintaining her residence in Florida and Carl Hoverson engaging in the farming operation near Larimore.  In January 2010, Carl Hoverson sued Sandra Hoverson for divorce, but the action was dismissed when the parties reconciled.  Sandra Hoverson thereafter lived predominately in North Dakota, and in August 2010, Carl Hoverson brought this divorce action against her.

[¶6] In May 2011, the district court entered an interim order granting Sandra Hoverson temporary, primary residential responsibility of the parties’ minor child and ordering Carl Hoverson to pay her $2,102 per month in temporary child support, $4,648 per month in temporary spousal support, and $25,000 for attorney’s fees.  The parties thereafter stipulated that Sandra Hoverson would have primary residential responsibility of their child.  After a December 2011 trial, the district court granted the parties a divorce, distributed the parties’ marital estate, which the court valued at about $14.5 million, with approximately 20 percent of the marital property, $2,832,393, going to Sandra Hoverson and 80 percent of the marital property, $11,639,267, going to Carl Hoverson, and ordered Carl Hoverson to pay Sandra Hoverson spousal support of $3,000 per month for two years, and to pay her $3,002 per month for child support.  The court also ordered Carl Hoverson to pay Sandra Hoverson’s attorney’s fees.

II

[¶7] Sandra Hoverson argues the district court clearly erred in distributing the parties’ marital property.  She argues the court erred in finding Carl Hoverson was not guilty of non-economic fault because there was evidence he had an extra-marital affair, the court erred in not considering his dissipation of marital assets from the land holding companies to his sons from his prior marriage, the court erred in distributing marital property based on the ratio of the length of the parties’ marriage and the years Carl Hoverson had been farming, the court erred in valuing the marital assets on October 31, 2010, rather than the date of trial in December 2011, and the court erred in relying on Carl Hoverson’s expert’s testimony to discount the value of his partnership share in Hoverson Farms.  Carl Hoverson responds the court erred in awarding Sandra Hoverson approximately $2.8 million in marital property and claims she should have been awarded only half that amount.

[¶8] A district court’s distribution of marital property is treated as a finding of fact, which we review under the clearly erroneous standard of review.  
Wold v. Wold
, 2008 ND 14, ¶ 6, 744 N.W.2d 541.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the  evidence, we are left with a definite and firm conviction a mistake has been made.  
Lynnes v. Lynnes
, 2008 ND 71, ¶ 12, 747 N.W.2d 93.  We view the evidence in the light most favorable to the district court’s findings, which are presumptively correct.  
Hitz v. Hitz
, 2008 ND 58, ¶ 10, 746 N.W.2d 732.  Our review under the clearly erroneous standard “does not allow us to reweigh the evidence, reassess the credibility of witnesses, or substitute our judgment for a district court’s initial decision.”  
Martiré v.Martiré
, 2012 ND 197, ¶ 6, 822 N.W.2d 450.  

[¶9] A district court is required to make an equitable distribution of divorcing parties’ marital property and debts.  N.D.C.C. § 14-05-24(1).  All property held by either party, whether held jointly or individually, is considered marital property, and the court must determine the total value of the marital property before making an equitable distribution.  
Ulsaker v. White
, 2006 ND 133, ¶¶ 12-13, 717 N.W.2d 567.  Marital property ordinarily is valued as of the date of trial.  
Id.
 at ¶ 13.  After the court values the property, the court must then equitably divide the entire marital estate under the 
Ruff-Fischer
 guidelines, which require the court to consider the following factors in the division: 

“The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.”

Ulsaker
, at ¶ 9 (quoting 
Horner v. Horner
, 2004 ND 165, ¶ 9, 686 N.W.2d 131).  
See
 
Ruff v. Ruff
, 78 N.D. 775, 52 N.W.2d 107 (1952); 
Fischer v. Fischer
, 139 N.W.2d 845 (N.D.1966). 

[¶10] Our law does not require a set formula or method for dividing marital property; rather, the division is based on the particular circumstances of each case.  
Wagner v. Wagner
, 2007 ND 101, ¶ 11, 733 N.W.2d 593.  A property division need not be equal to be equitable, but a substantial disparity must be explained.  
Bladow v. Bladow
, 2003 ND 123, ¶ 5, 665 N.W.2d 724.  A lengthy marriage generally supports an equal division of all marital assets.  
Id.
 at ¶ 8.  There is no bright-line rule to determine whether a marriage should be deemed a short-term or a long-term marriage.  
See
 
Hitz
, 2008 ND 58, ¶ 16, 746 N.W.2d 732 (stating not clear error to classify 10-year marriage as relatively short-term); 
Orgaard v. Orgaard
, 1997 ND 34, ¶ 11, 559 N.W.2d 546 (sustaining finding that 11-year marriage is “relatively short-lived”); 
Ulsaker
, 2006 ND 133, ¶ 14, 717 N.W.2d 567 (sustaining finding that 16-year marriage is long-term marriage).  A court’s finding of economic or non-economic fault is a finding of fact subject to the clearly erroneous rule.  
See
 
Halvorson v. Halvorson
, 482 N.W.2d 869, 871-72 (N.D. 1992).  

[¶11] The district court made findings under each of the factors in the 
Ruff-Fischer
 guidelines, including that the parties’ “six (6) plus year marriage” was short-term and a “later in life marriage” and Sandra Hoverson did not significantly contribute to the marriage during her many absences from North Dakota.  The court found the parties kept the majority of their assets separate and were separated for significant periods of time during their marriage.  The court found Sandra Hoverson’s choice to live in Florida for extended time periods “contributed to the decline of the marriage.”  The court also said Carl Hoverson admitted having an extramarital affair after he started the January 2010 divorce action, which was ultimately dismissed when the parties reconciled.  The court found “both parties [were] at fault for the breakdown of [their] marriage” and “[n]either party committed noneconomic fault.”  The court also found Carl Hoverson committed economic fault to the extent that during the divorce proceeding, he transferred some assets in land holding companies to his sons from his prior marriage.  The valuation evidence the parties provided to the court at the December 2011 trial was based on financial information through October and December 2010, and we cannot say the court misapplied the law in relying on the information provided to it by the parties.  The court’s valuation of the parties’ marital property is within the range of evidence presented at trial, and a property valuation within the range of evidence is not clearly erroneous.  
Hoverson
, 2001 ND 124, ¶ 13, 629 N.W.2d 573.  The court also found Sandra Hoverson brought about $140,000 worth of assets into the marriage and Carl Hoverson claimed she should be awarded only property she brought into the marriage, but she sought an equal distribution of marital assets the court valued at about $14.5 million.  The court rejected both parties’ proposals and awarded Sandra Hoverson about twenty percent of the parties’ marital estate:

If this court were to make an equal asset distribution as Sandra requests, it would have to ignore some of the Ruff-Fischer findings such as the short duration of the marriage; the unequal amount of assets each brought into the marriage; that the parties kept their assets separate; that Carl has worked and developed his farming business since about 1976; and that Sandra never actively engaged in helping Carl build his businesses.  Therefore, the court rejects Sandra’s proposal of an equal division of the assets.

Carl’s proposed property distribution essentially restores Sandra to her financial status prior to the marriage. . . .  Carl’s proposal is likewise not appropriate under the Ruff-Fischer guidelines.  Specifically, Carl’s proposed asset distribution does not take into consideration the earning ability and financial status of Sandra which is significantly less than his.  The parties also had a child and Sandra chose to stay home with the child.  Carl told Sandra she would not have to work after their marriage.  Carl’s assets increased significantly during the marriage.  Finally, the court did find that Carl committed economic fault by transferring membership to his sons in CHF Huntsville, CMC Farms and CHF Union Lake without consideration.

This court has considered the Ruff-Fischer guidelines as discussed earlier and has rejected each of the parties’ proposals for the asset distribution. Rather than just choosing a random property settlement figure, this court has considered that Carl has been engaged in the farming business and his built up his business for about 36 years. The majority of Carl’s assets are due to his farming businesses. At the time of the trial he had been married to Sandra in excess of 7 (seven) years, although the divorce had been pending since August of 2010, 7 (seven) years represents approximately 19.4 percent of 36 years. Applying 19.4 percent Carl’s business holdings ($13,626,917) yields approximately $2,643,621.  The court will award Sandra this amount as a property settlement.  

[¶12] Although we do not sanction the blind application of a set formula or ratio for distributing marital property, on the record before the district court and based on findings under the 
Ruff-Fischer
 guidelines, we are not left with a definite and firm conviction the court made a mistake in distributing the parties’ marital estate.  In the context of ruling on an objection during trial, the court recognized the parties’ disparate testimony about their marriage, stating “there is a credibility issue between these parties as to pretty much the entire marriage.  It’s like two different marriages.”  In their appeal and cross-appeal, both parties essentially invite us to reweigh the evidence, reassess the credibility of the witnesses, and substitute our judgment for the district court’s decision.  We decline the parties’ invitations.  
See
 
Martiré
, 2012 ND 197, ¶ 6, 822 N.W.2d 450.  The court’s explanation for the disparity in the property distribution is sufficient to understand the rationale for its decision, and we conclude the court’s property distribution is not clearly erroneous. 

III

[¶13] Sandra Hoverson argues the district court clearly erred in determining the duration and amount of her spousal support award of $3,000 per month for two years.  She claims the court’s findings support an award of permanent spousal support and the court did not explain why permanent support was denied.  She also claims the spousal support award is minimal and the amount will not allow her to enjoy a post-

divorce standard of living that she enjoyed while married.  She further claims the court’s conclusion the parties’ substantial disparity in income had been adjusted by the property division is contrary to law, and she should not be required to deplete her property distribution to live.  Carl Hoverson responds the court erred in awarding Sandra Hoverson even temporary support and that award should be reversed.  

[¶14] A spousal support award is a finding of fact that will not be set aside on appeal unless clearly erroneous.  
Duff v. Kearns-Duff
, 2010 ND 247, ¶ 13, 792 N.W.2d 916.  Under N.D.C.C. § 14-05-24.1, a district court may require one party to pay spousal support to the other party for any period of time after taking into consideration the circumstances of the parties.  In contemplating an award of spousal support, a court must consider the needs of the spouse seeking support and the ability of the other spouse to pay in conjunction with the 
Ruff-Fischer
 guidelines.  
Duff
, at ¶ 14.  
See
 
Sack v. Sack
, 2006 ND 57, ¶ 12, 711 N.W.2d 157 (directing spousal support focus at 
Ruff-Fischer
 guidelines rather than separate freestanding “disadvantaged spouse doctrine”).  The court is not required to make a finding on each 
Ruff-Fischer
 factor, but the court must explain its rationale for its determination.  
Paulson v. Paulson
, 2010 ND 100, ¶ 9, 783 N.W.2d 262.  

[¶15] This Court has recognized a preference for rehabilitative spousal support rather than permanent spousal support.  
Pearson v. Pearson
, 2009 ND 154, ¶ 7, 771 N.W.2d 288.  “‘Rehabilitative spousal support is awarded to equalize the burdens of divorce or to restore an economically disadvantaged spouse to independent status by providing a disadvantaged spouse an opportunity to acquire an education, training, work skills, or experience to become self-supporting.’”  
Paulson
, 2010 ND 100, ¶ 11, 783 N.W.2d 262 (quoting 
Wagner v. Wagner
, 2007 ND 33, ¶ 8, 728 N.W.2d 318).  “‘Rehabilitative support is appropriate when one spouse has bypassed opportunities or lost advantages as a consequence of the marriage or when one spouse has contributed during the marriage to the other’s increased earning capacity or moved to further the other’s career.’”  
Paulson
, at ¶ 11 (quoting 
Moilan v. Moilan
, 1999 ND 103, ¶ 11, 598 N.W.2d 81).  “Permanent spousal support is appropriate ‘when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development . . . lost during the course of the marriage.’”  
Duff
, 2010 ND 247, ¶ 15, 792 N.W.2d 916 (quoting 
Wagner
, at ¶ 8). “‘[P]ermanent spousal support . . . provide[s] traditional maintenance for a spouse incapable of adequate rehabilitation or self-support.’”  
Duff
, at ¶ 15 (quoting 
Wagner
, at ¶ 8).  “‘Even when a spouse is capable of rehabilitation, permanent spousal support may be an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living.’”  
Duff
, at ¶ 15 (quoting 
Wold
, 2008 ND 14, ¶ 14, 744 N.W.2d 541). 

[¶16] In conjunction with the district court’s analysis of the 
Ruff-Fischer
 guidelines, the court found that the parties’ marriage was short-term, that Sandra Hoverson had an established career in radiologic technologies before the marriage, that she spent significant time in Florida during the marriage and did not significantly contribute to the marital household or assist Carl Hoverson in building his career, that Carl Hoverson did not commit non-economic fault and his economic fault in transferring marital property to his sons from a prior marriage was addressed in the property distribution, that the parties’ substantial disparity in income was addressed by the property distribution, that Sandra Hoverson could be equitably rehabilitated, and that she had the ability to work outside the home.

[¶17] Spousal support and property division are intertwined.  
Kostelecky v. Kostelecky
, 2006 ND 120, ¶ 14, 714 N.W.2d 845.  Sandra Hoverson was awarded about $2.8 million in the court’s property distribution.  Although Carl Hoverson received about $11.6 million in the property distribution and has a greater earning capacity than Sandra Hoverson, the court found she has a demonstrated earning ability outside the home and has maintained her license and continuing education credits.  Sandra Hoverson’s arguments generally ignore the court’s findings that the parties’ marriage was a short-term marriage and she could be rehabilitated.  Although the duration of spousal support awarded in this case could be problematic under other circumstances, in this case, Sandra Hoverson testified she was not interested in returning to work as a radiologic technician, but has not cited specific evidence about the extent of any necessary or potential retraining.  

[¶18] On this record, we conclude the district court’s findings are sufficient to understand the rationale for the court’s decision.  We are not left with a definite and firm conviction the court made a mistake in awarding Sandra Hoverson spousal support of $3,000 per month for two years.  We conclude the court’s spousal support award is not clearly erroneous.

IV

[¶19] Sandra Hoverson argues the district court clearly erred in determining the amount of Carl Hoverson’s child support obligation.  She claims the court erred in awarding only a $900 per month upward deviation for child support.  
She argues that based on his average income of about $164,000 per month over the last five years, the court should have ordered a greater upward deviation from the presumed level of child support of $2,102 per month.  Carl Hoverson responds the court erred in awarding any upward deviation in child support and claims there was no showing of a need for deviation from the guidelines, or that a deviation would be in the best interest of the child.  

[¶20] “Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.”  
Buchholz v. Buchholz
, 1999 ND 36, ¶ 11, 590 N.W.2d 215.

[¶21] The child support guidelines establish a presumptive child support obligation based on the number of children and the obligor’s income.  
See
 N.D.C.C. § 14-09-

09.7(4); N.D. Admin. Code ch. 75-02-04.1.  The amount of the obligation calculated using the criteria in the guidelines is subject to a rebuttable presumption that it is the correct amount. N.D.C.C. § 14-09-09.7(4); N.D. Admin. Code § 75-02-04.1-09(1).  “The list of criteria for rebutting the presumption [in N.D. Admin. Code § 75-02-

04.1-09(2)] is exclusive,” and the “party urging a deviation from the presumptively correct amount of child support has the burden of proof.”  
Schmalle v. Schmalle
, 1998 ND 201, ¶ 15, 586 N.W.2d 677.  The presumption is rebutted “only if a preponderance of the evidence establishes a deviation from the guidelines is in the best interest of the supported children,” and one of the criteria is met.  
Id.
  One criterion that can rebut the presumption is “[t]he increased ability of an obligor, with a monthly net income which exceeds twelve thousand five hundred dollars, to provide child support.”  N.D. Admin. Code 
§ 
75-02-04.1-09(2)(b).  When an obligor’s income exceeds that amount, “the court must make a further inquiry to determine an amount appropriate to the needs of the children and the ability of the parent to pay.”  
Montgomery v. Montgomery
, 481 N.W.2d 234, 235 (N.D. 1992).  “[T]he ‘needs’ addressed by child support are the children’s ‘appropriate needs.’”  
Id.
 at 236 (quoting 
Heggen v. Heggen
, 452 N.W.2d 96, 102 (N.D. 1990)).

We say “appropriate” advisedly because it is likely that the “needs” of a child in a family with substantial income are more expansive because of the standard of living the family has enjoyed.  Where there are sufficient resources, children of divorce are entitled to enjoy a standard of living post-divorce comparable to that enjoyed while the family was intact. 

Heggen
, at 102.  “‘[C]hildren should be able to enjoy more than the subsistence level of support if the parents can afford greater amounts.’”  
Montgomery
, at 236 (quoting 
Wolf v. Wolf
, 474 N.W.2d 257, 259 (N.D. 1991)).

[¶22] Carl Hoverson’s income exceeds the highest enumerated monthly income of $12,500 per month under the child support guidelines.  The district court’s decision recognizes it considered the parties’ monthly expenses and income.  However, the record does not reflect Sandra Hoverson presented evidence of the child’s needs.  A party urging a deviation from the presumptively correct amount of child support has the burden of proof.  
Schmalle
, 1998 ND 201, ¶ 15, 586 N.W.2d 677.  The court found Sandra Hoverson did not present any specific evidence of the child’s appropriate needs, and she did not propose a specific amount for an upward deviation in child support.  On this record, we are not left with a definite and firm conviction the district court made a mistake in determining Carl Hoverson’s current child support obligation.  We therefore conclude the court’s child support award is not clearly erroneous.  

V

[¶23] Carl Hoverson argues the district court erred in ordering him to pay Sandra Hoverson’s attorney’s fees.  He argues this Court should find the district court abused its discretion in awarding her attorney’s fees without setting a specific amount in light of her substantial property award.  Sandra Hoverson responds the court did not abuse its discretion in ordering him to pay her attorney’s fees. 

[¶24] Under N.D.C.C. § 14-05-23, a district court has discretion to award attorney’s fees in an action for divorce.  
Jondahl v. Jondahl
, 344 N.W.2d 63, 73 (N.D. 1984).  A district court’s decision will not be disturbed on appeal unless the appealing party establishes the court abused its discretion.  
Heller v. Heller
, 367 N.W.2d 179, 184 (N.D. 1985).  “‘A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law.’” 
MayPort Farmers Co-op v. St. Hilaire Seed Co., Inc.
, 2012 ND 257, ¶ 8 (quoting 
McGhee v. Mergenthal
, 2007 ND 120, ¶ 9, 735 N.W.2d 867).

[¶25] In 
Jondahl
, 344 N.W.2d at 73, this Court described relevant factors for  awarding attorney’s fees:

in determining the amount of attorney’s fees to be paid by the opposing party, the trial court should consider the property owned by each party as a result of the property division, the relative income, whether the property is liquid or of fixed assets, and whether or not the actions of the parties unreasonably increased the time spent on the case.

[¶26] The district court’s decision recognized the property owned by each party as a result of the property distribution and the parties’ disparity in income.  At trial, there was evidence Sandra Hoverson owes about $35,000 in attorney’s fees in addition to the $25,000 already paid by Carl Hoverson.  We conclude the court’s decision to award Sandra Hoverson attorney’s fees was not arbitrary, capricious, or unreasonable, was the product of a rational mental process, and was not a misapplication or misinterpretation of the law.  We therefore conclude the court did not abuse its discretion in awarding her attorney’s fees.   

[¶27] In her reply brief, Sandra Hoverson requests costs and attorney’s fees for her appeal.  We have said that we will not address issues raised for the first time in a reply brief, because the reply brief is limited to issues raised in the appellee’s brief.  
Hendrickson v. Hendrickson
, 2000 ND 1, ¶ 20, 603 N.W.2d 896.  We conclude Sandra Hoverson is not entitled to attorney’s fees on appeal.  

VI

[¶28] We affirm the judgment.

[¶29] Mary Muehlen Maring

Daniel J. Crothers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

I concur in the result.

Dale V. Sandstrom