# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2018 ND 259

Chad W. Schultz, 

Plaintiff and Appellant

v.

Kelli C. Schultz, 

Defendant and Appellee

No. 20180097

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable Troy J. LeFevre, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Justice.

Tressie C. Brazil, Fargo, ND, for plaintiff and appellant.

Steven T. Ottmar, Jamestown, ND, for defendant and appellee.

**Jensen, Justice.**

[¶1]   Chad Schultz appeals from a final judgment and decree of divorce entered on January 17, 2018 dissolving his marriage to Kelli Schultz. Chad appeals the district court's valuation of marital assets and the allocation of the marital estate. We affirm.

[¶2]   Chad and Kelli were married in September 2008 following a one and one-half-year period of cohabitation. In February 2016, after approximately seven and one-half years of marriage, the parties separated and Chad moved out of the marital home. The marriage was dissolved on January 17, 2018 by the filing of the final judgment and decree of divorce. Including the period of cohabitation, the time the parties were married and living together, and the time they were married and living apart, the parties were together for approximately ten and one-half years. The district court found the marriage to be a "long-term" marriage.

[¶3]   In 2001, prior to the parties' marriage, Chad inherited a fifty percent interest in three separate quarters of Nelson County farmland. The parties agreed that Chad would receive the farmland in the property distribution, but disagreed whether a reciprocal value should be allocated to Kelli. Chad argued that when considering the length of the marriage and that he inherited the property prior to marriage, the property should be allocated to him without a reciprocal allocation of value to Kelli. Kelli requested an equal division of the farmland's value through post-judgment payments to her from Chad. The district court's property division allocated a reciprocal value to Kelli and ordered a series of post- judgment equalization payments from Chad to Kelli. The post-judgment payments included an interest rate of 4%.

[¶4]   The parties also disputed the valuation of the farmland. Chad and his father, Herbert Schultz, testified to their opinions on the value of each quarter. Kelli's values for the farmland came from the 2017 County Rents and Values survey funded by the

1

North Dakota Department of Trust Lands. The district court valued the farmland between the amounts suggested by the parties.

[¶5] In 2010, the parties purchased Face 2 Face Salon ("Salon") as a business to be operated by Kelli. The parties agreed that Chad paid $35,000 of the purchase price, and Kelli paid $5,000 towards the purchase price. The parties agreed the Salon would be distributed to Kelli, but disputed the valuation of the Salon. Kelli argued the Salon was worth $40,000, while Chad argued the Salon was worth $160,000. The district court found the Salon to have a value of $40,000.

[¶6] In June 2016, Chad's father, Herbert Schultz, finished building a home located in Jamestown, North Dakota. Title to the property was held jointly by Chad and his father. The parties disagreed on whether the home should be considered marital property. Chad argued, and his father also testified, the property should not be considered marital property because Chad's name appeared on the title only for the purpose of estate planning, the home was built at the end of the parties' marriage, and the funds used to build the home were from an inheritance received by Herbert Schultz. Kelli argued the property should be included because the deed provided that the property was held jointly by Chad and his father. The district court included one-half of the value of a one-half interest in the property in the marital estate.

[¶7] During the marriage, Chad was employed by the State of North Dakota and participated in the NDPERS retirement plan. All the contributions to the account were made during the marriage. Chad argued he should be allocated the entire NDPERS account, and Kelli should be allocated her MFS Roth IRA account. Kelli argued she should receive a portion of Chad's NDPERS account under the "Bullock" formula. The district court allocated the NDPERS account evenly between the parties and ordered the account to be split through the use of a Qualified Domestic Relations Order.

[¶8] Prior to the marriage, Kelli owned a home, subject to a mortgage. The parties used the residence as their marital home during the majority of the marriage. Chad paid $21,500 during the marriage to satisfy the mortgage. Chad also testified that he

2

paid for improvements to the home and contributed the labor to complete improvements to the home. Chad argued his contribution to the payment of the mortgage should be offset against the property allocated to Kelli. The district court declined to make the requested offset.

[¶9] Chad challenges the district court's overall allocation of the parties' marital property. He contends the district court erred by finding the marriage was "long-term," incorrectly valuing the farmland, not allocating the farmland to him without a reciprocal allocation to Kelli, incorrectly valuing the Salon, awarding Kelli a portion of his NDPERS retirement account, including his father's home in the marital estate, the inclusion of a property equalization payment, and applying a 4% interest rate to the equalization payment.

[¶10] In determining an equitable division of a marital estate, a district court is required to consider the *Ruff-Fischer* guidelines. *Lill v. Lill*, 520 N.W.2d 855, 857 (N.D. 1994). Along with the other factors included within the *Ruff-Fischer* guidelines, the district court is required to consider the duration of the marriage and source of the property in determining an equitable allocation of the parties' marital property. There is no bright-line rule to distinguish between short and long-term marriages. *Hitz v. Hitz*, 2008 ND 58, ¶ 16, 746 N.W.2d 732. Generally, a long-term marriage supports an equal division of all marital assets. *Bladow v. Bladow*, 2003 ND 123, ¶ 8, 665 N.W.2d 724. In a short-term marriage, the district court may distribute property unequally and award the parties what each brought into the marriage. *See Buzick v. Buzick*, 542 N.W.2d 756, 759 (N.D. 1996); *Lill*, 520 N.W.2d at 857. Despite these generalities, duration of a marriage is only one factor of the *Ruff-Fischer* guidelines and is not controlling in a distribution of marital property. *See Lill*, at 857.

[¶11] We review a district court's division of property as a finding of fact subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *Lill*, 520 N.W.2d at 857. Rule 52(a) provides that the district court's findings "must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial

3

court's opportunity to judge the witnesses' credibility." "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made." *Mertz v. Mertz*, 2015 ND 13, ¶ 4, 858 N.W.2d 292 (quoting *Brandner v. Brandner*, 2005 ND 111, ¶ 8, 698 N.W.2d 259).

[¶12]  The district court found the parties to have had a long-term marriage.  Chad argues our prior cases have established ten years as the dividing line between short and long-term marriages.  Chad asserts the district court erred in finding his marriage to be "long-term" because the parties were married only eight years.

[¶13]  We disagree that the district court was required to calculate the length of the parties' marriage at eight years.  First, the district court may consider how long the parties lived together before marriage.  *See Paulson v. Paulson*, 2010 ND 100, ¶ 10, 783 N.W.2d 262.  The district court here considered the parties' cohabitation for a year and a half before marriage.  Second, because the parties' marriage did not end until the issuance of the final decree of divorce, the district court could exercise its discretion and consider the time subsequent to the filing of the action to be included within the marriage.  *See* N.D.C.C. § 14-05-01.  In the present case, the parties had a one and one-half year period of cohabitation, were married for approximately seven and one-half years before the divorce proceedings began, and were separated for approximately two years before the final decree of divorce was entered.  Although we decline to draw a bright-line at ten years to define short and long-term marriages, the total time beginning with the parties' cohabitation until the entry of the final decree of divorce exceeded ten years.  As such, even if we were to adopt Chad's argument that our prior cases establish a bright-line at ten years, the evidence provided to the district court supports the court's determination that this was a long-term marriage. The court's determination that the parties' marriage should be considered long-term for the purpose of allocating their marital property was not induced by an erroneous view of the law, was not lacking in some evidence to support it, and we are not left

4

with a definite and firm conviction a mistake has been made. The district court's determination of a long-term marriage was not clearly erroneous.

[¶14] Chad challenges the district court's determination of the value of farmland and the value of the Salon. This Court will not reverse a district court's findings on valuation of marital property unless they are clearly erroneous. *See Corbett v. Corbett*, 2001 ND 113, ¶ 12, 628 N.W.2d 312. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made." *Kautzman v. Kautzman*, 1998 ND 192, ¶ 8, 585 N.W.2d 561. "A choice between two permissible views of the evidence is not clearly erroneous if the [district] court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." *Hoverson v. Hoverson*, 2001 ND 124, ¶ 13, 629 N.W.2d 573. The value a district court places on marital property depends on the evidence presented by the parties. *Fox v. Fox*, 2001 ND 88, ¶ 22, 626 N.W.2d 660. This Court presumes a trial court's property valuations are correct. *See Hoverson*, at ¶ 13.

[¶15] The district court was presented with competing valuations for farmland. Chad's father, a former township assessor, testified the farmland consisted of three quarters with differing values; one quarter at $400/acre, a second quarter at $500/acre, and the third quarter at $700-$800/acre. In summary, a total value for the farmland would be approximately $136,000. During his testimony, Chad valued the quarters at $52,958, $56,400, and $66,317 for a total value of $175,675. Kelli valued the farmland at $1,476/acre. Her estimate of the value was based upon the 2017 County Rents and Values survey funded by the North Dakota Department of Trust Lands.

[¶16] The district court considered both parties' testimony regarding the value of the land. The district court found the "best" quarter to have a value of $1,476/acre (Kelli's value) with the other two parcels having a value of $738/acre. The district court concluded that Chad's half interest in the land has a total value of $236,160.

[¶17]   The district court's valuation of the farmland fell within the values asserted by the parties.  "A property valuation within the range of evidence presented at trial is not clearly erroneous." *Jacobs-Raak v. Raak*, 2016 ND 240, ¶ 4, 888 N.W.2d 770. The district court's valuation was not induced by an erroneous view of the law, was within the range of evidence presented at trial, and we are not left with a definite and firm conviction a mistake has been made.  The valuation of the farmland was not clearly erroneous.

[¶18]   Chad also challenges the district court's valuation of the Salon.  Kelli valued the Salon at $40,000, based on the purchase price and her accountant's opinion.  Chad valued the Salon at $160,000 based on the net profits of the previous three years.  The district court found the Salon to have a value of $40,000.  Chad argues Kelli did not provide any documentation about the Salon's value, and her valuation was based only on the purchase price and not the value at the date of trial.

[¶19]   As noted above, our review of a district court's valuation of property is governed by the clearly erroneous standard of review.  An owner of property may testify as to the property's value. *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 9, 714 N.W.2d 845.  Kelli testified regarding her belief of the current value of the Salon, that her opinion was formed in part based on her accountant's opinion, and her value was consistent with the purchase price paid for the business.  The district court's finding was not induced by an erroneous view of the law, was within the range of the evidence presented, and we are not left with a definite and firm conviction a mistake has been made.  The valuation of the Salon was not clearly erroneous.

[¶20]   Chad argues the farmland should have been allocated to him without a reciprocal allocation of marital property to Kelli, because he acquired the property prior to marriage through an inheritance from his mother's estate.  The district court allocated the farmland to him and equalized the allocations from the marital estate by requiring Chad to make post-divorce equalization payments.

[¶21]   The district court did not err in finding the marriage to be "long-term," and a long-term marriage supports an equal division of all marital assets. *Bladow*, 2003 ND

6

123, ¶ 8, 665 N.W.2d 724. Even if we were to determine that the classification of the marriage as long-term to have been clearly erroneous, the district court is not required to return the parties to their pre-marriage status. The standard is permissive, as the court <u>may</u> distribute property unequally and award the parties what each brought into the marriage. *See e.g.*, *Buzick*, 542 N.W.2d at 759 (emphasis added). The district court also analyzed the *Ruff-Fischer* guidelines before coming to its decision that all assets would be divided equally. While Chad brought more assets into the marriage than Kelli, including the farmland, the district court's allocation of the farmland in a manner that did not allocate more of the marital property to Chad was not induced by an erroneous view of the law, was not lacking in some evidence to support it, and we are not left with a definite and firm conviction a mistake has been made. The distribution of the farmland in a manner that did not allocate more of the marital property to Chad was not clearly erroneous.

[¶22] Chad argues the district court erred by awarding Kelli any portion of his NDPERS account. As noted above, we do not find the district court's allocation of marital property to be clearly erroneous.

[¶23] Chad argues the district court erred in including his interest in the home in which his father resides. Herbert Schultz testified he titled ownership of the property jointly with Chad for estate planning purposes. Herbert and Chad testified they do not consider Chad to be an owner of the property. The district court determined that while the arrangement may have been done for estate planning purposes, Chad's one-half interest was part of the marital estate and was included in the equal allocation of the parties' marital property.

[¶24] "[A] trial court must start with a presumption that all property held by either party whether held jointly or individually is to be considered marital property." *Ulsaker v. White*, 2006 ND 133, ¶ 13, 717 N.W.2d 567. "The trial court must then determine the total value of the marital estate in order to make an equitable division of property." *Id.* "After a fair evaluation of the property is made, the entire marital

7

estate must then be equitably divided between the parties under the *Ruff-Fischer* guidelines." *Id.*

[¶25] Under North Dakota law, Chad has a one-half interest in Herbert Schultz's home. *See* N.D.C.C. § 47-02-08 ("Every interest created in favor of several persons in their own right is an interest in common."). The district court was required to include Chad's interest in the marital estate. As discussed above, the district court's allocation of the marital property was not induced by an erroneous view of the law, was within the range of the evidence presented, and we are not left with a definite and firm conviction a mistake has been made. The inclusion of Chad's interest in the property he holds jointly with his father and the distribution of property was not clearly erroneous.

[¶26] Chad argues the district court erred in its overall division of the marital estate. The majority of the argument is focused on the length of the marriage and the assertion that the district court erred in determining the marriage to be long-term. We have concluded the district court was not clearly erroneous in its determination that the parties had a long-term marriage.

[¶27] Chad challenges the overall distribution of the marital property also includes the contention the district court's analysis of the parties' conduct was lacking. "After a fair evaluation of the property is made, the entire marital estate must then be equitably divided between the parties under the *Ruff-Fischer* guidelines." *Hitz*, 2008 ND 58, ¶ 11, 746 N.W.2d 732. The *Ruff-Fischer* guidelines require a district court to consider the following factors in determining how to equitably divide the marital estate:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

8

*Bladow*, 2003 ND 123, ¶ 7, 665 N.W.2d 724 (internal quotations omitted). This Court "review[s] a district court's determinations regarding the division of property as findings of fact, and we will not reverse unless the findings are clearly erroneous." *Lorenz v. Lorenz*, 2007 ND 49, ¶ 5, 729 N.W.2d 692.

[¶28]   The district court analyzed the *Ruff-Fischer* guidelines before coming to its decision that all assets would be divided equally.  The length of the marriage was part of the district court's analysis, but not the only factor considered.  Although Chad brought more property into the marriage, after reviewing the district court's application of the *Ruff-Fischer* guidelines, we conclude the district court's allocation of marital property was not induced by an erroneous view of the law, was within the range of the evidence presented, and we are not left with a definite and firm conviction a mistake has been made.  The district court's allocation of marital property, including the equalization payment, was not clearly erroneous.

[¶29]   Chad challenges the district court's application of a 4% interest rate to the post-judgment equalization payments he is required to make to Kelli.  When a distribution of property includes periodic cash payments from one spouse to another, a district court has broad authority to provide for the payment of interest in order to achieve an equitable distribution of the property.  *Dick v. Dick*, 434 N.W.2d 557, 559 (N.D. 1989); *Klitzke v. Klitzke*, 308 N.W.2d 385, 390 (N.D. 1981); *Rudel v. Rudel*, 279 N.W.2d 651, 656 (N.D. 1979).  The district court is not limited to awarding interest at the legal rate under N.D.C.C. § 47-14-05; the court may award interest at any appropriate rate, beginning on any appropriate date.  *Dick*, at 559.  "When the district court <u>may</u> do something, it is generally a matter of discretion."  *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215.  A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Krueger v. Grand Forks Cnty.*, 2014 ND 170, ¶ 13, 852 N.W.2d 354.

[¶30]   Neither party presented evidence at trial regarding the proper interest rate of an equalization payment.  In Kelli's written closing argument, she requested a 4%

9

interest rate on any payment taking place over time. The district court did not explain how it came to its decision of a 4% interest rate. The post-judgment interest rate set by the State Court Administrator for 2018 is 7.5%, and the prime rate on December 4, 2017 was 4.25%. Despite the absence of explanation, we do not conclude that an application of a 4% interest rate under the circumstances of this case was arbitrary, unreasonable, or unconscionable, or a decision that was not the product of a rational mental process leading to a reasoned determination.

[¶31] The district court's determination of the property to be included within the marital estate, valuation of that property, and allocation of the property, was not clearly erroneous. The district court's application of a 4% interest rate was not an abuse of discretion. We affirm.

[¶32] Jon J. Jensen
Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Gerald W. VandeWalle, C.J.