2013 ND 176

**Catherine L. WALSTAD, Plaintiff and Appellant.**

v.

**Richard H. WALSTAD, Defendant and Appellee.**

**No. 20130023.**

Supreme Court of North Dakota.

Oct. 11, 2013.

See also 821 N.W.2d 770.

Dan D. Plambeck (argued) and Randolph E. Stefanson (on brief), Moorhead, MN, for plaintiff and appellant.

James R. Brothers, Fargo, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1]  Catherine Walstad appeals from a district court memorandum opinion and order reaffirming its previous judgment requiring Richard Walstad to pay her $37,222.90 to equalize a property distribution after he intentionally concealed marital assets during the parties' 1994 divorce. Because we conclude the district court did not follow our mandate on remand, the district court's property distribution is

clearly erroneous, and the district court abused its discretion in not awarding attorney fees, we reverse and remand.

## I

[¶ 2] As reported in *Walstad v. Walstad,* 2012 ND 204, 821 N.W.2d 770 (*"Walstad I "*), Catherine and Richard Walstad were divorced in 1994 after entering a stipulated property settlement stating "[b]oth parties agree that each has made a full disclosure to the other of all assets and liabilities." The settlement was incorporated into a 1994 divorce judgment that equally divided the parties' marital property, including their interest in a business, Cook Sign Company.

[¶ 3] In 2009, Catherine Walstad sued Richard Walstad, alleging she had recently learned that Richard Walstad hid marital assets before the entry of the divorce judgment. Specifically, she alleged Richard Walstad paid two employees of Cook Sign Company more than $100,000 in bonuses with the understanding the employees would return the bonus money to him after the divorce. Catherine Walstad alleged Richard Walstad's failure to disclose the inappropriate bonus payments resulted in a reduction in the value of the business for the parties' marital property valuation and a reduction in her share of marital property under the divorce judgment. She asked the district court to exercise its equitable powers and grant her relief from the 1994 divorce judgment.

[¶ 4] In 2010, Catherine Walstad moved to amend her complaint to assert a claim for punitive damages, and the district court denied her motion. After a bench trial, the district court awarded Catherine Walstad $37,222.90, finding Richard Walstad "wrongfully concealed" $50,000 from her during the divorce proceedings in a "scheme" and "concocted ... [a] plan to hide assets from [her]."

The court found Richard Walstad inappropriately paid a total of $50,000 in bonuses to the two employees in 1993, which should have been paid to him and included in the parties' marital estate. Based on the parties' applicable tax bracket, the court decided Richard Walstad would have received about $35,000 after taxes and Catherine Walstad was entitled to half that amount, or $17,500. The court also awarded Catherine Walstad prejudgment interest at seven percent and costs and disbursements of $174.90, for a total award of $37,222.90.

[¶ 5] Catherine Walstad appealed to this Court, arguing the district court abused its discretion in denying her motion to amend her complaint for punitive damages. *Walstad I,* 2012 ND 204, ¶ 1, 821 N.W.2d 770. We noted that:

Although Catherine Walstad presents her argument in the context of a motion to amend her complaint to include a claim for punitive damages, her argument raises questions about the procedure for raising issues about fraudulent concealment of marital property in a divorce proceeding and the efficacy of a subsequent claim for punitive damages under N.D.C.C. § 32–03.2–11(1) for the fraudulent concealment.

*Walstad I,* at ¶ 8. After a review of our caselaw, procedural rules, and legislative history, we concluded punitive damages were not available in this context because "the procedure in N.D.R.Civ.P. 60(b), [N.D.C.C. § 14–05–24(3) ] and an independent action in equity provide the established method[s] for addressing issues about a claimed fraudulent concealment of marital property during an earlier divorce proceeding." *Walstad I,* at ¶ 18. We remanded, however, because "the district court essentially divided the concealed property equally, and we [were] unable to discern from the court's decision whether

it considered application of economic fault or misconduct in the redistribution of property in the context of the independent action in equity." *Id.* at ¶ 19.

[¶ 6] On remand, the district court reaffirmed its original judgment awarding Catherine Walstad $37,222.90, noting:

The Court, considering [Catherine Walstad's] claim as an independent action in equity, and taking into account economic fault or misconduct, as well as the *Ruff–Fischer* guidelines, concludes that [Catherine Walstad] should be entitled to one-half of the $35,000.00* or $17,500.00, together with the seven percent interest. Since this is the amount the original Judgment required [Richard Walstad] to pay to [Catherine Walstad], no further Judgment need be entered in this matter.

[¶ 7] Catherine Walstad appeals.

## II

[¶ 8] Catherine Walstad argues the "District Court did not carry into effect the Supreme Court's mandate according to its terms."

[¶ 9] On remand, district courts must follow the mandate rule. *Investors Title Ins. Co. v. Herzig*, 2013 ND 13, ¶ 10, 826 N.W.2d 310 (citing *State v. Burckhard*, 1999 ND 64, ¶ 7, 592 N.W.2d 523). "The mandate rule, a more specific application of law of the case, requires the trial court to follow pronouncements of an appellate court on legal issues in subsequent proceedings of the case and to carry the [appellate court's] mandate into effect according to its terms." *Carlson v. Workforce Safety & Ins.*, 2012 ND 203, ¶ 16, 821 N.W.2d 760 (quotation omitted). This Court "retain[s] the authority to decide whether the district court scrupulously and fully carried out our mandate's terms."

*Burckhard*, at ¶ 7 (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir.1995)).

[¶ 10] In remanding the underlying case to the district court, this Court said:

Catherine Walstad's action stated Richard Walstad's fraud constituted grounds for an independent action in equity to obtain relief from the divorce judgment. In an independent action in equity to enjoin performance or otherwise grant relief from a blatantly unjust divorce judgment, however, a court has broad equitable powers to enjoin enforcement or otherwise grant relief from the earlier divorce judgment. We conclude that authority includes using the established *Ruff–Fischer* guidelines for property distribution, including consideration of economic fault and misconduct in distributing marital property. Here the district court essentially divided the concealed property equally, and we are unable to discern from the court's decision whether it considered application of economic fault or misconduct in the redistribution of property in the context of the independent action in equity. We therefore conclude a remand is appropriate for the court to apply the correct law in the context of this independent action in equity.

*Walstad I*, 2012 ND 204, ¶ 19, 821 N.W.2d 770 (internal citations omitted).

[¶ 11] In *Walstad I*, we remanded because we could not "discern from the court's decision whether it considered application of economic fault or misconduct in the redistribution of property in the context of the independent action in equity." *Walstad I*, 2012 ND 204, ¶ 19, 821 N.W.2d 770. Thus, to determine if the district court followed our mandate, we must evaluate the district court's property distribution in the context of an independent action in equity.

## III

[¶ 12] Catherine Walstad argues the "District Court's failure to adjust the property division based on Richard [Walstad's] misconduct was clearly erroneous."

[¶ 13] Under N.D.C.C. § 14–05–24(1), a district court must "make an equitable distribution of the property and debts of the parties." "A district court's distribution of marital property is treated as a finding of fact, which we review under the clearly erroneous standard." *Hoverson v. Hoverson*, 2013 ND 48, ¶ 8, 828 N.W.2d 510 (citing *Wold v. Wold*, 2008 ND 14, ¶ 6, 744 N.W.2d 541). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Hoverson*, at ¶ 8 (citing *Lynnes v. Lynnes*, 2008 ND 71, ¶ 12, 747 N.W.2d 93).

[¶ 14] In the original trial, the district court made findings of fact considering Richard Walstad's economic fault or misconduct and the impact of the concealed money. The district court found that Richard Walstad concealed $50,000 from Catherine Walstad in the 1994 divorce:

2. During the pendency of the divorce, [Richard Walstad] concocted a plan to hide assets from [Catherine Walstad], which involved Cook Sign Company, a business owned by the parties and two of Cook Signs Company's employees, Bernie Dardis and Steve Fliflet, wherein those individuals would receive extra bonuses and would repay that money back to [Richard Walstad] after the divorce was concluded. . . .

. . . .

4. If [Richard Walstad] had received the $50,000 in bonus money as opposed to paying that money to Dardis and Fliflet, those monies, would have been marital assets, subject to division between the parties. The Walstads were in a tax bracket so that [Richard Walstad] would have only netted approximately $35,000 from that $50,000 bonus. Therefore, [Catherine Walstad] is entitled to one-half share of that amount, or $17,500.

[¶ 15] Though the district court made findings of economic fault or misconduct, the court's award of $37,222.90 to Catherine Walstad in the original judgment did not consider economic fault or misconduct. At the status conference on remand, the court explained why it did not consider Richard Walstad's economic fault or misconduct: "[T]here was an agreement between you people, as far as I'm concerned, that whatever amount I found that Richard [Walstad] took, it would be split evenly between them." At this time in the litigation, Catherine Walstad was also seeking punitive damages, which this Court concluded were not authorized in this context. *See Walstad I*, 2012 ND 204, ¶ 18, 821 N.W.2d 770.

[¶ 16] On remand, the district court reaffirmed its original judgment. The court stated that it considered Richard Walstad's economic fault or misconduct and concluded that:

[E]quity does not require this Court to award anymore to [Catherine Walstad] than the one-half of the $35,000.00 and the seven percent interest. As a general rule, equity considers that as done which ought to be done. . . . Here, giving [Catherine Walstad] one-half of the hidden amount plus the seven percent interest called for by the Judgment, puts her in the same position as she would have been had the money been disclosed in the first place.

[¶ 17] The district court's property distribution, which reaffirmed its pre-

vious distribution, is clearly erroneous. We have previously said "[t]here is little question it is proper to consider and give significant weight to economic fault." *Theis v. Theis*, 534 N.W.2d 26, 28 (N.D. 1995) (citation omitted). The secreting of assets is a clear and blatant form of economic misconduct. *Peterson v. Peterson*, 1999 ND 191, ¶ 4, 600 N.W.2d 851. But it also implicates economic misconduct in the form of intentional non-disclosure of substantial marital assets. *See* N.D.C.C. § 14–05–24(3). The legislature has acknowledged that disclosure of property and debts is necessary to equitable division of property, and relief should be available when disclosure has not been made. Richard Walstad affirmatively represented in a document filed with the district court and on which Catherine Walstad relied, that he had made full disclosure of all assets and liabilities in their divorce proceeding.

[¶ 18] The district court's original award of $37,222.90 to Catherine Walstad did not consider Richard Walstad's economic fault or misconduct. After considering Richard Walstad's economic fault or misconduct, in which the district court explicitly found Richard Walstad "concocted ... [a] plan to hide assets," the court awarded Catherine Walstad the same amount, determining "equity does not require this Court to award anymore to [Catherine Walstad] than the one-half of the $35,000.00 and the seven percent interest." In *Theis*, we affirmed a district court's property distribution that awarded Marion Theis "a net award of approximately a negative $5,000, leaving John [Theis] with a property distribution of approximately $47,000." 534 N.W.2d at 27. The district court found Marion Theis engaged in "reprehensible conduct involving economic fault whereby she has absconded with marital assets" and also "wrongfully endorsed a check for $9,360.00 payable to John [Theis]." *Id.* In affirming the district court, we highlighted that it was proper to give significant weight to Marion Theis's economic fault in the property distribution. *Id.* at 28. Here, however, it appears on remand the district court failed to give any weight to Richard Walstad's admitted economic fault or misconduct, nor has it given any consideration to the significant efforts necessary to recoup the hidden assets.

[¶ 19] The award also does not reflect the high standard to obtain relief in an independent action in equity. When we remanded in *Walstad I* with instructions to "apply the correct law in the context of this independent action in equity," we acknowledged Catherine Walstad could maintain an independent action in equity. *Walstad I*, 2012 ND 204, ¶ 19, 821 N.W.2d 770. The district court also acknowledged this as well, noting it "consider[ed] [Catherine Walstad's] claim as an independent action in equity."

[¶ 20] An independent action in equity is "available only to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (cited by *Walstad I*, 2012 ND 204, ¶ 10, 821 N.W.2d 770). In *Hamilton v. Hamilton*, this Court evaluated, at length, the availability of an independent action in equity to obtain relief from a judgment. 410 N.W.2d 508, 517 (N.D.1987). We noted that this specific equitable remedy cannot be used to "set aside a judgment simply because it is unjust, irregular, or erroneous," or because we would come to a different conclusion. *Id.* Rather, we noted this equitable remedy was available when "a judgment ... ought not, in equity and good conscience, be enforced" and it was based on "fraud, accident or mistake." *Id.* at 516. We noted that "the independent action in equity to obtain relief from judgment may afford a

party the only relief from a blatantly unjust judgment." *Id.* at 519.

[¶ 21] The property distribution here, however, reflects neither the serious nature of Richard Walstad's economic fault or misconduct, nor the high standard to obtain relief in an independent action in equity.

[¶ 22] It appears part of the district court's rationale for reaffirming its original judgment was that at trial, the parties sought to split the concealed money. Assuming, without deciding, that the parties sought to split the concealed money, the district court's decision on remand ignores an important distinction: Catherine Walstad's original trial argument to split the concealed money worked in tandem with her motion for punitive damages. In *Walstad I*, we made it clear she was unable to maintain a claim for punitive damages in this context. 2012 ND 204, ¶ 18, 821 N.W.2d 770. At the status conference after remand, the district court recognized the case had changed: "But this is completely a different case than what we [originally] tried.... And I want to know if the remand can effect the type of case that we tried where the parties argued to me that they should ... split [the concealed money] 50/50. Can they renege on that based upon the fact that there's a remand here telling me to do something differently." Catherine Walstad recognized the case had changed as well, noting what she "could have argued differently and what she asked the trial court to do ... in the first instance are not material on remand." Her brief to the district court on remand argued:

> Based on the trial court's findings of misconduct, Catherine [Walstad] requests the court to enter an amended judgment redistributing the parties' property to include, at a minimum, an award to Catherine [Walstad] of a sum of money equal to or greater than $50,000.00 together with prejudgment interest at the rate of seven percent per annum from and after October 25, 1994 and together with all costs and attorney fees incurred by Catherine [Walstad] in connection with this action....

[¶ 23] The district court's memorandum opinion and order reaffirming its previous judgment failed to adequately recognize that Catherine Walstad's claim had changed on remand. We conclude the district court erred in its conclusion that "equity does not require this Court to award anymore to [Catherine Walstad] than the one-half of the $35,000.00 and the seven percent interest."

[¶ 24] Moreover, we are unable to understand the district court's rationale for its interest award. In the original trial, the district court denied Richard Walstad's request to apply a six percent interest rate to the concealed money, instead awarding Catherine Walstad seven percent interest on her after-tax half of the concealed money, noting: "The [1994] marital termination agreement, however, provides for seven percent interest on the outstanding sums that were due.... Therefore, the Court believes that it is equitable to apply the seven percent interest rate to this debt." But, on remand the district court stated: "Here, the Court has considered economic and non economic fault. In fact, this Court considered the inequities of what [Richard Walstad] did by awarding [Catherine Walstad] seven percent interest, the amount called for in the Judgment to compensate her over and above her one-half share of the $35,000.00." The district court's original rationale for awarding seven percent interest directly conflicts with its rationale on remand for awarding seven percent interest. Seven percent, being the amount called for by the parties' original agreement, merely compensates Catherine

Walstad for the loss of use of one-half of the concealed amount. It makes no adjustment for economic fault or misconduct.

[¶ 25] In *Walstad I*, we remanded because we could not discern whether the district court "considered application of economic fault or misconduct in the redistribution of property in the context of the independent action in equity." *Walstad I*, 2012 ND 204, ¶ 19, 821 N.W.2d 770. Though the district court stated it "[took] into account economic fault or misconduct, as well as the *Ruff–Fischer* guidelines," the property distribution is clearly erroneous, and we have a definite and firm conviction a mistake has been made. The district court did not carry into effect our mandate according to its terms.

[¶ 26] We reverse and remand with instructions to reconsider the property distribution, giving appropriate weight and consideration to Richard Walstad's admitted economic fault and misconduct.

IV

[¶ 27] Catherine Walstad argues the district court erred by not awarding her "all costs and attorney fees . . . in connection with this action."

[¶ 28] "A district court has discretion to award attorney fees and costs in divorce actions under N.D.C.C. § 14–05–23." *Martinson v. Martinson*, 2010 ND 110, ¶ 14, 783 N.W.2d 633 (citing *Heinle v. Heinle*, 2010 ND 5, ¶ 32, 777 N.W.2d 590). In deciding a request for attorney fees and costs under N.D.C.C. § 14–05–23, the trial court must:

> balance one [party's] needs against the other [party's] ability to pay. The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time

spent on the case. An award of attorney fees requires specific findings supported by evidence of the parties' financial conditions and needs.

*Martinson*, at ¶ 14 (quoting *Heinle*, at ¶ 32). "In determining whether to award costs and attorney fees, fault is a consideration only to the extent one party has unreasonably escalated the fees." *Martinson*, at ¶ 24 (citing *Wagner v. Wagner*, 2007 ND 101, ¶ 23, 733 N.W.2d 593).

[¶ 29] A district court's award of attorney fees "will not be disturbed on appeal unless the appealing party establishes the court abused its discretion." *Hoverson*, 2013 ND 48, ¶ 24, 828 N.W.2d 510 (citation omitted). "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law." *Id.* (citation and quotations omitted).

[¶ 30] The district court did not award Catherine Walstad attorney fees, and it appears the court did not address the issue. "Generally, this Court applies the 'American Rule,' which requires parties to bear their own attorney's fees" unless the fees are "expressly authorized by statute." *In re Guardianship of D.M.O.*, 2008 ND 100, ¶ 14, 749 N.W.2d 517 (quotation and citations omitted). However, both N.D.C.C. § 14–05–23 and our caselaw recognize that domestic cases are different; specifically, district courts in domestic cases have more latitude in awarding attorney fees. Considering Richard Walstad's actions, we are unable to discern why the court did not award attorney fees to Catherine Walstad.

[¶ 31] In determining attorney fees and costs under N.D.C.C. § 14–05–23, "the court must balance one [party's] needs against the other [party's] ability to pay."

*See, e.g., Martinson,* 2010 ND 110, ¶ 14, 783 N.W.2d 633. But, an award for attorney fees in the context of an independent action in equity for fraudulent concealment of marital assets has a different focus. Balancing Richard Walstad's ability to pay with Catherine Walstad's needs would have been relevant in the original 1994 divorce action, absent their stipulated settlement, but here it is not. We conclude in the context of an independent action in equity for fraudulent concealment of marital assets, balancing one party's ability to pay with the other's needs is secondary to considering whether the actions of one party unreasonably increased litigation costs.

[¶ 32] In this case, determining whether one party's actions have unreasonably increased the time and expenditures on the case is easily established. Richard Walstad's concealment of marital assets has not only unreasonably increased the time and financial expenditures on this case, it is the sole reason for the litigation. In *Kautzman v. Kautzman,* 1998 ND 192, ¶ 35, 585 N.W.2d 561, the trial court made findings of fact that Robert Kautzman increased the costs of litigation by failing to cooperate with the discovery process, failing to cooperate with the special master assigned to the litigation, and other various reasons. *Id.* We noted that "[i]n light of those findings of fact ... the trial court should have addressed explicitly the issue of an award of attorney fees to the extent Robert [Kautzman's] actions unreasonably increased the time and effort spent on the dispute." *Id.* at ¶ 36 (citation and quotation omitted). Here, Richard Walstad admitted he concealed assets from Catherine Walstad in the 1994 divorce proceeding. As the district court found, Richard Walstad "concocted" a scheme to conceal money in the 1994 divorce proceeding. Richard Walstad hid marital assets from Catherine Walstad

and the district court, and he did not admit his actions until forced to do so. Consequently, but for Richard Walstad's actions in 1994, Catherine Walstad would not have incurred significant expenses prosecuting this matter to receive an equitable distribution of what should have been equitably distributed in 1994. Though Richard Walstad asserts Catherine Walstad has "tried to make this case into something it was not," we disagree.

[¶ 33] We conclude the district court's failure to award Catherine Walstad attorney fees was an abuse of discretion. Because Richard Walstad's concealment of marital assets is the sole reason for the litigation, the district court on remand is to award Catherine Walstad reasonable attorney fees, costs, and disbursements for the trial of this action and this appeal.

V

[¶ 34] Because we conclude the district court did not follow our mandate on remand, the district court's property distribution is clearly erroneous, and the district court abused its discretion in not awarding attorney fees, we reverse and remand for proceedings in accordance with this opinion.

[¶ 35] H. PATRICK WEIR, S.J., DALE V. SANDSTROM, J., concur.

[¶ 36] The Honorable H. PATRICK WEIR, S.J., sitting in place of MARING, J., disqualified.

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 37] It is apparent that Richard Walstad's concealment of marital assets unreasonably increased litigation costs. To that extent I agree with the majority that the district court abused its discretion in not awarding attorney fees under the facts of

this case. However, I agree with the dissent's analysis of the distribution of the marital assets. I would therefore affirm that portion of the order distributing the marital assets and reverse that portion of the order denying the award of attorney fees to Catherine Walstad.

[¶ 38] GERALD W. VANDE WALLE, C.J.

CROTHERS, Justice, dissenting.

[¶ 39] I respectfully dissent.

[¶ 40] Our question is whether the district court complied with this Court's directions on remand. A closing paragraph in *Walstad v. Walstad,* 2012 ND 204, 821 N.W.2d 770, states: "Here the district court essentially divided the concealed property equally, and we are unable to discern from the court's decision whether it considered application of economic fault or misconduct in the redistribution of property in the context of the independent action in equity. We therefore conclude a remand is appropriate for the court to apply the correct law in the context of this independent action in equity." *Id.* at ¶ 19.

[¶ 41] The district court subsequently issued a memorandum opinion expressly stating it was "considering Plaintiff's claim as an independent action in equity." Absent rejection of the district court's representation, we must conclude the district court accepted Catherine Walstad's lawsuit as an independent action in equity seeking relief from the original judgment. I would accept the district court's representation. I would conclude the district court applied the correct law, as directed on remand.

[¶ 42] In *Walstad I,* we cited *Hamilton v. Hamilton,* 410 N.W.2d 508 (N.D.1987), as modern precedent recognizing an independent action in equity as means for revisiting a wrongfully obtained judgment.

2012 ND 204, ¶ 10, 821 N.W.2d 770. In *Hamilton,* this court explained:

"The 'independent action' label has, generally, been used in conjunction with the vacation or modification of judgment when discussing a separate action initiated outside and separate from any previous judgment and attempting to attack the merits of the prior decision. Such 'independent actions' are usually collateral attacks on a previous judgment and it is axiomatic that these actions are impermissible as a matter of law and cannot be entertained by the court. *See, e.g., Gruebele v. Gruebele,* 338 N.W.2d 805 (N.D.1983); *Harchenko v. Harchenko,* 77 N.D. 289, 43 N.W.2d 200 (1950).

"However, any general reference to an 'independent action' must be distinguished from an 'independent action in equity to obtain relief from judgment.' An 'independent action in equity to obtain relief from judgment' is a general recognition of the equitable powers of a court to entertain an independent action to enjoin the enforcement of, or otherwise procure relief from, a judgment on whatever basis chancery would afford relief. 7 Moore's Federal Practice ¶ 60.12 (2d ed.1985). An independent action in equity to obtain relief from judgment is a *separate legal claim* and Rule 60(b), N.D.R.Civ.P., recognizes that ancillary equitable remedies for obtaining relief from judgment were *not* superseded by the provisions of the rule. 7 Moore's Federal Practice ¶ 60.10 (2d ed.1985).

"The original jurisdiction of chancery to relieve a party from judgment was not impaired by the adoption of the procedural recognition in Rule 60(b), N.D.R.Civ.P. In fact, it was specifically 'saved' and preserves the court's power to entertain such claims if previously recognized under 'established doctrine.' Advisory Committee Note to 1948

amendment of Rule 60(b), 5 F.R.D. 433, 479. This claim has historically been known simply as 'an independent action in equity to obtain relief from judgment' and is not an affirmative grant of power, nor does it operate to vacate or annul a judgment. The independent action in equity to obtain relief from judgment is a separate legal claim which merely permits continuation of whatever power the court would have had to entertain an independent action if Rule 60(b), N.D.R.Civ.P., had never been adopted, thereby denying a party who obtained judgment through fraud, misrepresentation, accident, or mistake the benefits of that judgment."

410 N.W.2d at 513 n. 4.

[¶ 43] With this background provided to the district court, our direction on remand was, upon reopening the original judgment, for it to make equitable distribution of the concealed property. *Walstad I*, 2012 ND 204, ¶ 19, 821 N.W.2d 770. In *Walstad I*, we reminded the district court that that distribution should be made "using the established *Ruff–Fischer* guidelines for property distribution, including consideration of economic fault and misconduct in distributing marital property." *Id.* Thus, the district court's task was not to punish Richard Walstad's misconduct. Rather, the district court was instructed to equitably distribute the asset as if included in the estate in the first instance, while remaining mindful that it had certain additional considerations in making that distribution due to Richard Walstad's concealment.

[¶ 44] The parties in this case took widely disparate views of what constitutes equitable relief from the original judgment. Catherine Walstad argued for substantial redistribution of the marital estate. Richard Walstad concealed $50,000.00, but Catherine Walstad claimed $350,000.00, representing half the stipulated original value of Cook Sign Company. Richard Walstad argued for an award of $17,500.00, representing half the post-income tax value of the concealed money.

[¶ 45] On remand, the district court did as we directed by considering the *Ruff–Fischer* guidelines and Richard Walstad's economic fault or misconduct. The district court explained in its memorandum opinion, "The Court, considering Plaintiff's claim as an independent action in equity, and taking into account economic fault or misconduct, as well as the *Ruff–Fischer* guidelines, concludes that Plaintiff should be entitled to one-half of the $35,000.00 or $17,500.00, together with the seven percent interest." In making this ruling, the district court made these findings:

- The total marital estate was valued at $1,169,716.00;
- Catherine Walstad received $635,000.00 or 54.3 percent of the marital estate;
- Richard Walstad received $534,716.00 or 45.7 percent of the marital estate;
- Richard Walstad received Cook Sign Company as part of his distribution;
- Had the $50,000.00 cash from Cook Sign Company not been diverted to others, the sum would have been paid to Richard Walstad as a bonus;
- The post-tax value of $50,000.00 is $35,000.00;
- $35,000.00 represents less than 3 percent of the marital estate;
- The equities do not favor substantially redistributing the marital estate as urged by Catherine Walstad but instead favor splitting the value of the concealed asset plus 7 percent interest.

[¶ 46] I believe the district court complied with our directions on remand. The majority disagrees. Interestingly, the majority's contrary conclusion is not driven

by the district court's failure to correctly apply the law. Rather, the majority reverses because of the district court's result—it made the same financial award after remand as it made in the first post-judgment proceeding. *See* Majority opinion at ¶ 15 ("Though the district court made findings of economic fault or misconduct, the court's award of $37,222.90 to Catherine Walstad in the original judgment did not consider economic fault or misconduct."); ¶ 18 ("The district court's original award of $37,222.90 to Catherine Walstad did not consider Richard Walstad's economic fault or misconduct. After considering Richard Walstad's economic fault or misconduct, in which the district court explicitly found Richard Walstad 'concocted … [a] plan to hide assets,' the court awarded Catherine Walstad the same amount, determining 'equity does not require this Court to award anymore to [Catherine Walstad] than the one-half of the $35,000.00 and the seven percent interest.' ").

[¶ 47] Clearly, the majority does not accept the same result before and after remand because Richard Walstad has not been penalized for his misconduct. However, the district court's task on remand was not to punish Richard Walstad—it was to equitably distribute marital assets. That task is a finding of fact which we review under the clearly erroneous standard of review. Majority opinion at ¶ 13 (citing *Hoverson v. Hoverson*, 2013 ND 48, ¶ 8, 828 N.W.2d 510 (citing *Wold v. Wold*, 2008 ND 14, ¶ 6, 744 N.W.2d 541)). The parties had widely divergent arguments for redistribution. A district court does not clearly err by selecting one alternative for distribution over another. *See Gibbon v. Gibbon*, 1997 ND 210, ¶ 9, 569 N.W.2d 707 ("The trial court could have structured the payments in several different ways; however, the possibility of implementing a different method for the distribution is not enough to convince us the method used by the trial court is clearly erroneous. *See Olson v. Olson*, 445 N.W.2d 1 (N.D.1989) (possibility of different permissible divisions of marital property is not enough to establish error).").

[¶ 48] Instead of adhering to our standard of review, the majority requires that Richard Walstad be punished for withholding the asset, notwithstanding the law of the case holding punitive damages are unavailable. Majority opinion at ¶ 5 ("After a review of our caselaw, procedural rules, and legislative history, we concluded punitive damages were not available in this context because 'the procedure in N.D.R.Civ.P. 60(b), [N.D.C.C. § 14–05–24(3) ] and an independent action in equity provide the established method[s] for addressing issues about a claimed fraudulent concealment of marital property during an earlier divorce proceeding.' *Walstad I*, [2012 ND 204, ¶ 18, 821 N.W.2d 770].").

[¶ 49] This case is not about punishment, or at least it should not be. Upon divorce, marital estates are divided equitably. *Walstad I*, 2012 ND 204, ¶ 19, 821 N.W.2d 770; *Bladow v. Bladow*, 2003 ND 123, ¶ 5, 665 N.W.2d 724. "It is well-settled that a property division need not be equal to be equitable, but a substantial disparity must be explained." *Bladow*, at ¶ 5. As noted in *Walstad I*, economic misconduct can be considered. *Id.* at ¶ 19. The majority does not explain how the district court is to implement the economic misconduct consideration. However, our precedent provides direction. This Court has held economic misconduct is an appropriate reason to restore diverted or wasted assets to the marital estate. *See Halvorson v. Halvorson*, 482 N.W.2d 869, 870–71 (N.D.1992) (including value of dissipated assets in husband's award was appropriate method to equitably distribute property in light of his economic fault); Lee R. Russ,

Annotation, *Divorce–Dissipation of Assets,* 41 A.L.R.4th 416, §§ 3–4 (1985). Thus, the use of equitable property distribution in a divorce should not be used for over-allocation of an asset to one former spouse as punishment for the other former spouse's economic misconduct. Rather, reallocation remains an exercise in equitable distribution, and the majority cites no case allowing the application of a different formulation.

[¶ 50] Finally, the majority reverses and remands for an award of attorneys fees, effectively concluding as a matter of law that one who conceals marital assets must pay the other party's attorneys fees. I respectfully dissent from that broad determination for reasons including that the majority fails to distinguish between awarding attorneys fees under N.D.C.C. § 14–05–23 and under a district court's inherent power to sanction, and that under any legal measure the district court did not abuse its discretion because it could have determined Catherine Walstad's claim was unreasonable.

[¶ 51] Explaining the difference between statutory attorneys fees and attorneys fees as a sanction, we stated:

"Under N.D.C.C. § 14–05–23, the primary standard governing an award of attorney fees in a divorce action is one spouse's needs and the other spouse's ability to pay. Under that statute, we have recognized that where a party's actions have unreasonably increased the time spent on a case, attorney fees may be appropriate.

"A district court also has inherent authority to sanction a litigant for misconduct. 'Sanctions must be reasonably proportionate to the misconduct.' When sanctioning a party for misconduct, a district court should consider and make findings on the culpability or state of mind of the party against whom sanc-

tions are being imposed, the prejudice to the moving party, the impact of the prejudice on the moving party's ability to present or defend the party's case, and the availability of less severe sanctions.

"A district court has discretion in awarding attorney fees as a sanction in divorce actions. An award of attorney fees as a sanction will not be disturbed on appeal unless the court abuses its discretion. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination."

*Kelly v. Kelly,* 2011 ND 167, ¶¶ 34–36, 806 N.W.2d 133 (quotation and citations omitted).

[¶ 52] Here, the majority is unclear whether the district court must award attorneys fees under the statute requiring a showing of need and ability to pay or under the court's inherent authority to sanction, or both. Reference to "a different focus" in cases involving an independent action in equity suggests attorneys fees are required here as a sanction. Majority opinion at ¶ 31. However, we are left guessing because later in that same paragraph the majority mixes in the weighing exercise required to award attorneys fees under the statute, N.D.C.C. § 14–05–23. Majority opinion at ¶ 31 ("We conclude in the context of an independent action in equity for fraudulent concealment of marital assets, balancing one party's ability to pay with the other's need is secondary to considering whether the actions of one party unreasonably increased litigation cost."). Thus, the basis for the majority's action is unclear. Clear however is that the majority holds Catherine Walstad is entitled to attorneys fees as a matter of law "[b]ecause Richard Wal-

stad's concealment of marital assets is the sole reason for the litigation." *Id.* at ¶ 33. *See also id.* at ¶ 32 ("Richard Walstad's concealment of marital assets has not only unreasonably increased the time and financial expenditures on this case, it is the sole reason for the litigation.").

[¶ 53] The district court did not explain why attorneys fees were not awarded. We could and probably should remand for an explanation. But the majority does not send the issue back for that reason; rather, they make clear "the district court abused its discretion in not awarding attorney fees, we reverse and remand for proceedings in accordance with this opinion." Majority opinion at ¶ 34. On remand, the district court must award attorneys fees—albeit based on an unknown measurement.

[¶ 54] Attorneys fees awarded as a sanction—as these likely are intended to be—are subject to an abuse of discretion standard of review. The majority opinion recognizes this, stating:

"A district court's award of attorney fees 'will not be disturbed on appeal unless the appealing party establishes the court abused its discretion.' *Hoverson*, 2013 ND 48, ¶ 24, 828 N.W.2d 510 (citation omitted). 'A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law.' *Id.* (citation and quotations omitted)."

Majority opinion at ¶ 29.

[¶ 55] Here, nothing allows me to conclude as a matter of law that the district court abused its discretion in not awarding attorneys fees. The district court was confronted with one party demanding $350,000.00 plus costs and attorneys fees because $50,000.00 was concealed. The other party argued for equal division of the concealed money. In an absolute sense, this proceeding would be unnecessary but for concealing the money. However, unlike the majority, I cannot say as a matter of law that Richard Walstad's withholding the money was the "sole reason" for the litigation. Rather, the district court well could have concluded that Catherine Walstad's position unreasonably increased the cost of litigation or that the parties both acted unreasonable at some stage of the case so that they should pay only their own attorneys fees. Therefore, based on these facts and on the law of the case requiring equitable distribution of the concealed asset, I cannot conclude the district court was arbitrary, unreasonable or unconscionable in not awarding attorneys fees to either party.

 DANIEL J. CROTHERS